ELIZABETH LEMON vs. THE PHŒNIX MUTUAL LIFE INSURANCE
COMPANY AND ANOTHER.

Upon the application of *A* a policy of insurance upon his life was issued by a
life insurance company, for his own benefit. *A* afterwards surrendered this
policy to the company, and at his request a second policy was issued in lieu
thereof, similar in all respects to the first, except that it was payable to *B* to
whom *A* was engaged to be married. The second policy was by direction of
*A* placed in the hands of *C* as a depositary for *B*. *A* afterwards, without
the knowledge or consent of *B*, obtained possession of the second policy, and
surrendered it to the company, who cancelled it and issued in lieu thereof a
third policy, similar to the others, except that it was payable to *D*, to whom
*A* was indebted and intended it as security for such indebtedness. *D* paid
one premium upon the third policy. At the time the second and third
policies were issued *A*'s health was such that he was unable to pass the re
quired medical examination for a new policy.

In a bill in equity by *B* against the company and *D*, who resided beyond the
jurisdiction of the court, and although notified of the pendency of the suit did
not appear, praying that the company might be ordered to pay the avails of
the third policy to her, and enjoined against paying them to *D*, it was held that
there was an executed gift of the second policy to *B*; that the consideration
for the third policy was the surrender of the second, and that therefore *B* was
equitably entitled to the benefit of the third policy, and was entitled to a de-
cree ordering the avails of it paid to her, less the amount of the premium
paid by *D*.

BILL IN EQUITY, to compel the Phœnix Mutual Life Insur-
ance Company to pay to the petitioner the amount of a policy
of life insurance ; brought to the Superior Court, and referred
to a committee who found the following facts :

On the 1st of January, 1868, the respondents, the Phœnix
Mutual Life Insurance Company, a corporation established by
this state, were doing business by their agent in this state
and in Canada, and have so continued to do business ever
since. On the 9th of January, 1868, George C. Peterson,
of Canada, made application to the company, through their
agents at Montreal, for a policy of insurance on his life, termed
an endowment policy, payable at fifty years of age, or at his
death if earlier. On the 13th of January, 1868, in pursuance
of this application, the company issued a policy upon Peterson's
life for $3,000, payable to himself, which was sent to the com-

pany's agent at Montreal for his counter-signature and delivery to the assured.  In November, 1868, Peterson applied to the Montreal agents to have his policy changed and made payable to the petitioner, but made no new application, nor did the company ever make any new examination of Peterson, nor was his health such as to enable him to pass the necessary medical examination for a new policy in November, 1868, or afterwards.

The agents wrote to the company on the 24th of November, and immediately as is supposed after Peterson's request, returning the policy, saying that Peterson " wants a policy payable to Miss Elizabeth Lemon, Stamford, Ontario."  The company on the 27th of November wrote a new policy payable to the petitioner, bearing the same date and number and for the same amount as the original policy, which they cancelled. This policy was duly sent to the company's agents at Montreal, where it remained until the 15th of December, 1868.  Peterson requested the agents to forward the policy to Charles Lemon, the brother of the petitioner.  He also wrote to Lemon that he had done so ; and the agents forwarded the policy to Charles Lemon on the 15th of December, 1868.  Peterson also informed Miss Lemon of what he had done.  Peterson went south for his health, which was failing, starting November 30th, 1868, nor was he able to do business after that time until his death.  Lemon received the policy in the ordinary course of the mails, probably on the 16th or 17th of December.  On the 16th of December, 1868, Peterson wrote from Aiken, South Carolina, to the agents at Montreal, asking them to have his policy changed from the favor of Miss Elizabeth Lemon to that of his brother Peter Alexander Peterson, Stamford, Ontario, saying, " after the policy is changed please return the same to Mr. Geo. P. MacPherson, who will hand you this with the policy."  George Peterson sent a letter to Lemon from Aiken, dated December 14th, 1868, saying, " please send the policy I advised you would be sent to you to George P. MacPherson, Montreal."  Lemon sent the policy to MacPherson forthwith, and MacPherson took it to the agents, who sent it to the home office.

The company in January, 1869, on surrender to them of Lemon's policy, cancelled it, and wrote another policy numbered and dated as the others had been, and similar to the Lemon policy, excepting that Peter A. Peterson's name appeared in the place of Miss Lemon's. Miss Lemon had no knowledge of the transfer to Peter A. Peterson, and gave no consent thereto. Charles Lemon had no knowledge of the transfer until after George Peterson's death. Before the first change in the policy, when Peterson had expressed to Lemon his intention of changing it to her benefit, she suggested to him the propriety of giving it to her brother. George C. Peterson died October 19th, 1869, and Peter A. Peterson furnished due proofs of his death to the company. The last policy was found with George C. Peterson's effects. Peter had not seen it until after George's death. Neither Charles nor Elizabeth Lemon made any inquiries about the policy after its change to Peter's favor, during George's life, nor did either of them pay, or take any measures to pay, the premium upon it. Miss Lemon and George C. Peterson promised marriage to each other in 1867, which promise was binding at the time of issuing all the policies. Miss Lemon had no other interest in George's life. Peter A. Peterson advanced money to George to take care of him in his sickness, and went south with him in November, 1868 ; and George was in Peter's debt in November, 1868, and always afterwards, to a considerable amount, although not to the full amount of the policy. George had the policy changed from Miss Lemon's benefit to Peter's, to secure him for his existing and anticipated debts, intending to make the policy solely beneficial to Peter, who relied upon the policy for his security for his advances. The company were not aware that either of the policies had ever gone out of George's possession when they wrote the one beneficial to Peter. Had they known it, they would have required, in addition to its surrender, a written assignment from Miss Lemon. George paid the two premiums upon the policy, but Peter furnished him the money which he used to pay the second premium. George left a small estate, outside of this policy, not enough to pay his brother's advances.

By the law of Lower Canada the insured must have an insurable interest in the life upon which the insurance is effected. He has an insurable interest in the life of himself, of any person upon whom he depends wholly or in part for support or education, of any person under legal obligation to him for the payment of money, or respecting property or services which death or illness might defeat or prevent the performance of, and of any person upon whose life any estate or interest vested in the insured depends.

Peter A. Peterson, who resided in Canada, was made a party to the bill, and pursuant to an order of court service was made on him by mail, but he made no appearance. The Superior Court accepted the report of the committee, and reserved the question what decree should be passed for the advice of this court.

*C. E. Perkins,* for the petitioner.

*Goodman,* for the Phœnix Mutual Life Insurance Co.

1. The ground of the claim of the petitioner is that the policy of insurance payable to her has been fraudulently obtained from Charles Lemon. This allegation has not been proved.

2. If the petitioner had not delivered her policy to George C. Peterson, he could not have obtained the last policy from the company. By doing this she contributed to produce the result of which she complains. The petitioner must show affirmatively that there was no concurring negligence on her part. *Birge* v. *Gardiner,* 19 Conn., 511, 509.; 1 Story Eq. Jur., sec. 105; *Marine Ins. Co. of Alexandria* v. *Hodgson,* 7 Cranch, 336, 332.

3. Peter Peterson did not know that a policy on George Peterson's life was ever made payable to the petitioner; he knew it was made payable to him, and in good faith advanced money to George on the security of it. His equity is superior to that of the petitioner, even if the policy had been fraudulently obtained from her. Our courts have decided that a bona fide

purchaser of personal property from one who had obtained it by fraudulent representations as to his credit, can hold it. *Thompson* v. *Rose,* 16 Conn., 71.

4.   The petitioner's policy contained the provision that if the annual premium was not paid on or before a specified day in each year, the policy should cease.   The premium upon that policy was not paid ; no effort to pay it was made by the petitioner.   The policy has ceased by its own terms.

5.   Peter A. Peterson is the person who is chiefly interested as respondent. The petitioner asks the court to decree that the policy payable to him be delivered up.   This court has no jurisdiction over Peterson, or the policy.   He is not a party to the petition; he is out of this jurisdiction.   No process has been served upon him; he does not appear.   Any decree made by this court will not be binding upon him or the property. *Aldrich* v. *Kinney,* 4 Conn., 380 ; *Picquet* v. *Swan,* 5 Mason, 35; *Buchanan* v. *Rucker,* 9 East, 192.   If the court make a decree ordering the amount of this policy to be paid to the petitioner, it decides that Peter A. Peterson is not entitled to the money; he is affected by the decree.   Story Eq. Pl., secs. 77, 81, 87, 130, 135, 138. If complete justice cannot be done without other persons being made parties, the court will stay its proceedings.

If Peterson would not be bound by the decree, then he might sue the company in the courts of Canada, and the company again be compelled to pay the amount of the policy to him.   By the laws of Canada, all foreign insurance companies which do business in Canada have to acknowledge the jurisdiction of their courts.   The courts in that country have jurisdiction of all the parties. The petitioner could have brought her petition there, and made Peterson a party.   There was no necessity for her coming into our courts.   Canada is legally as much the home of the insurance company as Connecticut. In no case has a court of equity ever made a decree in favor of a resident of a foreign country, whose courts have jurisdiction of all the parties and the subject matter, in the absence of some of the parties to be affected by the decree.

6.   The contract is to be governed by the laws of Canada. The policy was not to be binding until the policy was counter-

signed by the agent of the company at Montreal, and the premium paid. The premium was paid in gold, and the loss was to be paid in gold. A policy of insurance from a company established in one state, signed by the president and secretary there, but not.to be valid until countersigned by the agent in another state, is to be interpreted by the laws of the latter state. *Heebner* v. *Eagle Ins. Co. of Cincinnati*, 10 Gray, 131; *Daniels* v. *Hudson River Fire Ins. Co.*, 12 Cush., 422; *Pomeroy* v. *Manhattan Life Ins. Co.*, 40 Ill., 398.

7. The policy shows that the insurance in this case was made by the petitioner upon the life of George C. Peterson. The policy is the contract between the parties. The sum to be paid is to be paid her. This cannot be contradicted by any parol evidence. *Glendale Manufacturing Co.* v. *Protection Ins. Co.*, 21 Conn., 37, 19. She is the insured. *Shilling* v. *Accidental Death Ins. Co.*, Fisher Dig., 4907.

8. The petitioner had no interest in the life of George C. Peterson. The fact that they were engaged to be married would not give her insurable interest in his life. It is not a consideration for a note. *Raymond* v. *Silleck*, 10 Conn., 480. By the common law all policies of insurance in favor of parties who had no interest in the life of the insured were wager policies, and null and void. This is the law of all the states except where it has been altered by statute. *Ruse* v. *Mut. Benefit Life Ins. Co.*, 23 N. Y., 516; *Bevin* v. *Conn. Mut. Life Ins. Co.*, 23 Conn., 244. Our courts have decided that it is a contract of indemnity. By the laws of Canada the insured must have an insurable interest in the life upon which the insurance is effected. The petitioner by those laws had no such interest in the life of George C. Peterson. Civil Code of Lower Canada, sec. 2590.

9. If we are wrong as to the admission of the testimony about the policy, then we say that it is proved that the premiums on the first and last policy were paid by George. The money to pay the last premium was furnished by Peter, and the policy made payable to him. George did not intend to have the policy beyond his own control. Charles Lemon supposed it was under the control of George. The fact that the

policy was made payable to the petitioner does not decide this question. The burden of proof is on her to show that it was intended for her benefit. *Pfleger* v. *Browne*, 28 Beav., 391 ; *Clark* v. *Durand*, 12 Wis., 223 ; *Kerman* v. *Howard*, 23 id., 108 ; *Rison* v. *Wilkinson*, 3 Sneed, 565. George had the right to have the policy changed and made payable to Peter.

10. The petitioner claims the avails of this policy by gift from George C. Peterson ; the contract of marriage the consideration of the gift. By the laws of Canada gifts by contract of marriage are valid, even as regards third parties, only in the event of the marriage taking place. Code, sec. 822. If this was a gift *inter vivos*, to make it valid it is necessary to prove that it was accepted by the donee. *Merrills* v. *Swift*, 18 Conn., 261, 257. By our law an acceptance of the gift may be presumed. But we claim that the evidence does not show a gift by Peterson. This gift was made during the supposed mortal illness of the donor, and is void by the laws of Canada. Code, sec. 762. If there was a gift to the petitioner, and it was accepted by her, it was revoked by George C. Peterson, and he had a right to revoke it. By the laws of Canada it might be revoked for ingratitude by the donee. Code, sec. 811. Gifts by contract of marriage, and remunatory or onerous gifts, are subject to this revocation. *ibid.* This gift is fraudulent as to the creditors of Peterson. *Redfield* v. *Buck*, 35 Conn., 328.

SEYMOUR, J. In January, 1868, the respondent issued a policy on the life of George C. Peterson for $3,000. This was in the usual form of an endowment policy, and no question arises upon it. In November, 1868, this policy was surrendered and cancelled, and at the request of the assured a new policy issued in its place, like the former in every respect except that it was payable to the petitioner, with whom the assured was under an engagement of marriage. The leading question in this case is whether the petitioner became the owner of this second policy.

It is not claimed that the mere fact of making the policy payable to Miss Lemon, without more, vested in her a com-

plete title.   It is conceded that so long as Mr. Peterson retained it in his own possession, he might control it as his own. On the other hand it is not doubted that, if Mr. Peterson delivered it to Miss Lemon as a gift to her, such delivery would vest in her a complete title.   The difficulty in the case is in determining whether, on the facts found, the policy may properly be regarded as having been in legal effect delivered to her.   This is so much a mere matter of fact that the committee should have distinctly found it the one way or the other, but, instead of a direct finding, we have a special statement of facts bearing on the question, and it is left to the court to decide the ultimate facts, by inference from this special statement. Neither the petitioner nor the respondent saw fit to remonstrate against the acceptance of the report of the committee. On the contrary the report is accepted without objection from either party ; and we must dispose of the question as best we may with the light we have.

First, the fact that Mr. Peterson caused the policy to be made payable to Miss Lemon, indicates a settled purpose in his mind that she should have the benefit of it; and his acts immediately after will naturally be construed as intended to carry out such purpose.   Second, when therefore the policy is by Mr. Peterson's order sent to Miss Lemon's brother, we naturally regard it as sent to him *for her*, as depositary for her, and for her benefit, rather than as depositary for Mr. Peterson himself.   Third, it appears from the committee's report that the intended change in the policy for her benefit was communicated to her before it was made, and that it was upon her suggestion that the policy was placed in the hands of her brother.   Fourth, after the policy was changed and made payable to Miss Lemon, and sent to her brother, she was informed by Mr. Peterson of what he had done.   Upon these considerations, in view of all the facts in the case, we think we must find that there was an executed gift of the policy to Miss Lemon, and that the delivery to her brother was as depositary for her.

In December, 1868, Mr. Peterson changed his mind in regard to this policy, and obtained possession of it from Mr.

Lemon, by what means does not distinctly appear; but the committee's report gives no countenance to the idea that it was by fraudulent means, as charged in the bill. It does however appear that the possession was obtained without the petitioner's consent, and also that she had no knowledge of the second change of the policy now to be spoken of, until after Mr. Peterson's death.

In January, 1869, Mr. Peterson having, as before stated, obtained possession of policy number two, caused it to be surrendered, and a new one, number three, to be issued in its place, payable to Peter A. Peterson, a brother of George. George went south for his health which was failing, starting November 30th, 1868, and he was not able to do business after that time till his death, October 19th, 1869. His health was not such as to enable him to pass the necessary medical examination for a new policy in November, 1868, or afterwards.

Upon these facts it is clear that the consideration for policy number three, was the surrender of policy number two. Mr. Peterson's health was such that number three would not have been issued, if the company had not been bound by number two. And inasmuch as policy number two belonged to the petitioner, it was her property that, without her consent, was used to procure number three. She is therefore equitably entitled to the benefit of this policy.

Mr. Peterson's money however, to the extent of the premium paid in January, 1869, is represented in policy number three; and to that extent Miss Lemon has no interest; and from the $3,000 due on the policy the amount of that premium and interest on it should be deducted, and the balance paid to the petitioner.

A question was made before us that Miss Lemon had not an insurable interest in Mr. Peterson's life. If she had undertaken to obtain, and had herself obtained, an insurance on his life, that question might have arisen. But surely Mr. Peterson had an insurable interest in his own life, and *he* obtained the insurance on it; and we know of no law to prevent him from making the policy payable in case of his death to the

person to whom he was affianced ; and if such policy is delivered as a gift to the party to whom payable, we know no law to prevent such gift from being effectual. In *Rauls* v. *American Life Ins. Co.*, 27 N. Y., 282, Judge WRIGHT says, " If the contract is with the party whose life is insured, he may have the loss payable to his own representatives, or to his assignee or appointee." Besides, the company treated policy number two as valid ; it appears that policy number three was issued in consideration of the surrender of number two, as before stated, and the question now to be decided is not on the validity of number two, but whether Miss Lemon has an equitable interest in number three.

The company also claimed that the petitioner ought not to have a decree in her favor, while another is claiming the money by the terms of policy number three. We appreciate the difficulty of the company's situation, exposed as it may be to a suit by Peter A. Peterson. If the company had brought a bill of interpleader in Canada, or elsewhere, before a court having proper jurisdiction, this case would probably have been continued to await the result.  But no bill of interpleader has been brought, and upon the pending bill, if the petitioner shows herself entitled to the insurance money, we must decree it to her, notwithstanding the possibility that upon a suit by Peter A. Peterson the facts may appear otherwise than they do to us. The petitioner has done all she could to make Peter A. Peterson a party to this bill. He has been notified of its pendency, and has had an opportunity to appear and show his title, if he has any. He evidently chooses not to enter an appearance. We are not called on to say what effect, if any, these circumstances would have upon any suit which he may bring against the company, either here or in another jurisdiction.

We advise the Superior Court to pass a decree in favor of the petitioner, to the extent and in the manner above specified. We ought however to say that it has not escaped our attention that the bill is not in its allegations precisely adapted to the facts as found by the committee, nor precisely to the grounds upon which relief is granted. But no point was made by

the respondent on this account, and if any question had been made, we probably should have advised, as has been done in similar cases, that the bill be amended to correspond with the case as shown by the report of the committee.

In this opinion the other judges concurred; except CAR-PENTER, J., who dissented.