JOHN T. JOHNSON ET AL.

v.

ELIZABETH L. VAN EPPS.

</div>

1. LIFE INSURANCE—POWER TO CHANGE BENEFICIARY.—While the beneficiary named in a policy takes such an interest in it as entitles him to receive the money when by the terms of the contract it becomes payable, to the exclusion of the heirs or personal representatives of the insured, yet such interest, in the absence of any statute affecting the question, is subject to the right of the insured, who pays the premiums and retains control of the policy, to dispose of it or to change the beneficiary, at least with the consent of the insurer.

2. POLICY PAYABLE TO "HEIRS" OR "PERSONAL REPRESENTATIVES"—The doctrine contra to the above, that the beneficiary, where a particular person is named as beneficiary, acquires a vested interest in the policy and its proceeds to the extent of depriving the person insured of the power of disposing of the policy during his life-time, is not applicable to a policy made payable to the "heirs," the "legal" or "personal representatives" of the insured.

3. MEANING OF TERM "LEGAL REPRESENTATIVES."—"Legal representatives" by the professional meaning of the words, are understood to refer to executors and administrators. While such words under certain circumstances may be construed as referring to heirs or assigns, there must be something in the subject-matter of the contract, the context or surroundings, that requires a departure from the usually accepted meaning, before the forced construction will be adopted and acted upon by courts.

4. WAGER POLICIES—QUESTION FOR JURY.—Where a person takes out an insurance upon his own life, for the benefit of some third person, who

Johnson et al. v. Van Epps.

may not have an insurable interest in the life insured, the question whether it is a gambling or wagering policy is in every case one for the jury to determine under proper instructions; and if it be found that the insured has been the principal actor in the transaction and has entered into it with an honest purpose to aid one whom he deems a proper object of his bounty, the transaction will be sustained; but if it appears the party insured is a mere nominal party and he procured the insurance for the purpose of giving the beneficiary the advantage of such insurance upon his life, when the beneficiary could not obtain it in his own name, the policy will be declared void.

5. INSURABLE INTEREST—CHANGE OF BENEFICIARY.—A was insured in a Masonic benevolent society and the contract of insurance was with A and made payable to his wife or his legal representatives, and the wife having died, he, with the consent of the insurer, changed the beneficiary, surrendered the first certificate in consideration of a second in which Mrs. V, a married woman living apart from her husband, was named as beneficiary. Prior to the change of certificates, it was agreed between A and Mrs. V that in case a divorce was procured from Mrs. V's husband, they would marry. When A obtained the change of certificates he represented Mrs. V as his affianced. Mrs. V, who was keeping house, agreed to furnish A with a home and care for him and if necessary keep up the accruing assessments, all of which was faithfully performed. *Held*, that the surrender of the first certificate was not void as against A's heirs, and that Mrs. V. could become a beneficiary in the substituted certificate.

APPEAL from the Circuit Court of Peoria county; the Hon. DAVID McCULLOUGH, Judge, presiding. Opinion filed February 5, 1884.

On August 1, 1872, the Illinois Masons Benevolent Society issued to Havilah B. Johnson, a member of the order, a certificate of membership in said society, in and by which the society agreed, in consideration of certain assessments to be paid by said Johnson upon the death of any member of his class in said society, to pay, upon the death of said Johnson, to his wife, Judith Johnson, or to his legal representatives, a certain sum per member of the class to which the insured might belong at the time of his death.

His wife, Judith, died in 1877.

Her death caused the breaking up of his household, as they had no children, and from that time Mr. Johnson had no home of his own.

Johnson et al. v. Van Epps.

His health becoming impaired, and his means of support becoming insufficient to provide him adequate support, he, in the year 1879, endeavored to dispose of the benefits secured to him by said certificate to different parties if they would support him during his life and pay the accruing assessments upon it, but did not succeed.

He did not, however, permit the certificate to lapse, and on the 17th day of January, 1880, he, by arrangement with the insurer, surrendered it and in lieu thereof received another with the like conditions as in the former, except upon his death the proceeds were to be paid to Mrs. Van Epps, the appellee, or to his heirs. Mrs. Van Epps, at this time, was living apart from her husband, a contract to that effect existing between them, and it was expected that a divorce would result, which, in fact, did occur in October, 1880.

Mr Johnson and the appellee had been acquainted for a long time, and it was, prior to the change of certificates, agreed that in case such divorce was procured they would intermarry. Mr. Johnson then applied to the association to have her made the beneficiary in the certificate, representing her as his affianced, and the change was made as above noted.

The appellee, who was keeping house, agreed to furnish him a home and care for him, and, if necessary, to keep up the accruing assessments.

The evidence shows that she faithfully complied with the contract upon her part, and that Mr. Johnson throughout his long sickness needed for nothing that money could purchase to make him comfortable. He died on the 25th day of October, 1881, expressing his gratitude for the care and attention he had received at her hands, and his satisfaction that she would not be wholly unrequited for the same, as the certificate which she then held would be paid to her. After his death, these appellants, John T., being a brother, and the others nephews and nieces of the deceased, notified the association that they claimed the proceeds of the certificate, and forbidding its payment to the appellee, while she, also claiming the entire benefit, brought suit upon the certificate, and the association filed its bill of interpleader, confessing its lia-

bility upon the contract of insurance, and brought the amount due upon it into court, the sum being $4,160.41, and asked that the rival claimants be compelled to litigate their claims to the fund and the association be discharged.

The court upon hearing awarded the money to Mrs. Van Epps, and the heirs appealed.

Mr. MILES A. FULLER, Messrs. FULLER & KEITHLEY and Mr. W. T. WHITING, for appellants; that whenever a person insuring his life, names the beneficiary, the promise of the insurer is to pay to such beneficiary, and the insured can have no interest in such promise and no power to transfer its benefits to another without the consent of the beneficiary, cited Bliss on Life Ins., § 317; May on Ins., §§ 390, 391; Cont. Life Ins. Co. v. Palmer, 42 Conn. 60; Chapin v. Fellows, 36 Conn. 132; Cont. Mut. Life v. Burroughs, 34 Conn. 305; Eadie v. Slimmons, 26 N. Y. 9; Swan v. Snow, 11 Allen, 224; Gosling v. Caldwell, 1 Lea (Tenn.), 454; Wilburn v. Wilburn, 83 Ind. 56; Gould v. Emerson, 99 Mass. 154; Knickerbocker Life v. Weits, 99 Mass. 157; Ricker v. Charter Oak Ins. Co., 27 Minn. 193; Allis v. Ware, 28 Minn. 166; Williams v. Williams, 68 Ala. 406; Succession of Kugler, 23 La. 455; Pilcher v. N. Y. Life Ins. Co., 33 La. An. 322; Barry v. Eq. Life Ins. Co., 59 N. Y. 587; Glanz v. Gloeckler, 104 Ill. 573; Libby v. Libby, 37 Me. 359.

Where the term " legal representatives" is used and the intent of the party, gathered either from the instrument itself or from its nature and the circumstances under which it was executed, shows that heirs were intended, such intent will control: Bliss on Life Ins., § 319; Warnecke v. Lembca, 71 Ill. 91; Bowman v. Long, 89 Ill. 19; Loos v. Hancock, 41 Mo. 540; Masonic, etc., v. McAuley, Am. Law Reg. 1883, p. 141.

Corporations can only exercise such powers as are specifically granted to them or are necessary or incident thereto. Appellee can not take, because by the articles of the society she is not an object of bounty: Detrich v. Madison R. Asso., 45 Wis. 84; Ballou v. Gile, 50 Wis. 618; Mut. Ben. Asso. v. Hoyt, 46 Mich. 473; Hodge's Appeal, 12 Chicago Legal News, 422; Duvall v. Goodson, 59 Ky. 224.

Messrs. Starr & Starr and Mr. John C. Yates, for appellee; as to the right of the insured to dispose of his policy, cited Clark v. Durand, 12 Wis. 248; Kerman v. Howard, 23 Wis. 108; Foster v. Gile, 50 Wis. 603; Gambs v. Mut. Life Ins. Co., 50 Mo. 44; Mut. Ben. Life Ins. Co. v. Atwood, 24 Gratt. 497; Mut. Life Ins. Co. v. Coghill, 30 Gratt. 72; Pulvertoft v. Pulvertoft, 18 Vesey, Jr., 98; Doll v. Lincoln, 31 Me. 428.

As to the consideration of the articles of the society governing the disposition of certificates: Duran v. Central Verein, 7 Daly, 168; Supreme Council v. Priest, 9 N. W. Rep. 481; The People v. Johnson, 14 Ill. 342; Otis v. Beckwith, 49 Ill. 121; Cole v. Marple, 98 Ill. 58; Lemon v. Phœnix Life Ins. Co., 38 Conn. 294; City Fire Ins. Co. v. Mark, 45 Ill. 482; Tillon v. Kingston Mut. Ins. Co., 7 Barb. 573; Traders Ins. Co. v. Roberts, 9 Wend. 404; Charleston Ins. Co. v. Rose, 2 McMullan, 237.

Certificates of these corporations are discussed and governed by the same rules as policies of insurance: Masonic Ben. Soc. v. Winthrop, 85 Ill. 537; Ill. Masons Ben. Soc. v. Booth, 12 Chicago Legal News, 150; Campbell v. New England Ins. Co., 98 Mass. 381; Ill. Masons Ben. Soc. v. Baldwin, 86 Ill. 479; Com. League, etc., v. The People, 90 Ill. 166; State v. Mer. Exc. Mut. Ben. Soc., 72, Mo. 146; Commonwealth v. Wetherbee, 105 Mass. 160.

As to the doctrine of *ultra vires:* Darst v. Gale, 83 Ill. 141; Bradley v. Ballard, 55 Ill. 413; Aurora, etc., Soc. v. Paddock, 80 Ill. 267; Chicago Building Soc. v. Crowell, 65 Ill. 453; Gillet v. Logan Co., 67 Ill. 256.

The certificate would be enforced against the company as a gift to appellee: Bliss on Life Ins., 513–515; Grangias v. Arden, 10 Johnson, 291; Dale v. Lincoln, 62 Ill. 22; Majors v. Everton, 89 Ill. 56; Cranz v. Kroger, 22 Ill. 74.

Pillsbury, J. Appellants urged a reversal of this decree upon two grounds: first, that the surrender of the first certificate by Mr. Johnson was void as against them; secondly, that Mrs. Van Epps had no insurable interest in the life of

Mr. Johnson and she could not therefore become a benefici-ary in the substituted certificate.

In support of the first proposition it is said by counsel in their brief, that the following points are conclusively estab-lished by the authorities cited, viz.:

"That immediately upon the issuance of the first policy, payable to Judith Johnson or to the legal representatives of H. B. Johnson, the right of said beneficiaries became vested and could not be divested in any way without their consent. The property, or ownership of the policy, was in the bene-ficiaries and beyond the control of Johnson, the insured, and he could do no act to divest or transfer it from them to other parties. It springs from the nature of the contract, and can not be otherwise. Whenever the person insuring his life names the beneficiary, the promise of the insurer is to pay to such beneficiary, and the insured can have no interest in such a promise and no power to transfer its benefits to another, without the consent of the beneficiary. It is in the nature of an executed gift, or settlement, and has passed beyond the control of the party procuring it."

We must confess that the broadness of the position assumed when applied to the facts of this case, the persistency and candor with which it is maintained, and the great array of authorities cited in its support, caused us to doubt whether our preconceived opinion that a man in disposing of his prop-erty for his own benefit, was not violating any principle of the common law, was correct, and led us into a careful examina-tion of all the authorities cited, so far as they were available to us, and many others not referred to by counsel.

The case of the Continental Life Insurance Co. v. Palmer, 42 Conn. 60, is one where the wife insured the life of the hus-band, the amount insured to be payable to her if she survived him, if not, to her children. One son died in 1870, leaving a son surviving him, the wife died in 1872 and the husband in 1873. The question was whether the grandson was entitled to share in the proceeds of the policy. The court held that under the provisions of the statute of that State, the policy being made payable to the wife and children, that the children

immediately took such vested interest in the policy that the grandson was entitled to his father's share, the wife having died before the husband. It was also said " but for the statute, it would have been a fund in the hands of his representatives for the benefit of the creditors, provided the premiums had been paid by him."

In the cases of Chapin v. Fellows, 36 Conn. 132, and the Continental Trust Life Ins. Co. v. Burroughs, 34 Conn. 305, the contracts of insurance were also procured by the wife upon the life of the husband and the decisions therein were based upon the statutes of that State, which protect policies procured for the benefit of the wife, or the wife and children, from the claims of the creditors, or the acts of the husband.

In Eadie v. Slimmon, 26 N. Y. 9, the policy was issued to Mrs. Eadie upon the life of her husband, James, for the sole use of his wife, Jessie, her personal representatives or assigns, and should she die before her said husband, then to her children. Eadie and wife assigned the policy to secure a debt, and both having died, the wife first, the children claimed the money as against the assignee. The court held that this contract was within the statute of 1840, which provided that such contracts of insurance inured to the benefit of the wife and children and could not be assigned so as to deprive the children of the benefit thereof, in case the wife died before the husband.

This construction of the statute was adhered to in Barry v. Equitable Life Ins. Co., 59 N. Y. 58, and the rights of the parties determined under its provisions.

The cases referred to of Libby v. Libby, 37 Me. 359; Swan v. Snow, 11 Allen 224; Gould v. Emerson, 99 Mass. 154; Knickerbocker Ins. Co. v. Weitz, 99 Mass. 157; Gosling v. Caldwell, 1 Lea (Tenn.), 454, and The Fraternal Life Ins. Co. v. Appelgate, 7 Ohio, 292, were each determined under the statutes of those States, which provided in substance, that policies of insurance upon the life of the husband taken out under the provisions of the statute, inured to the benefit of the beneficiaries named in such policies, and the proceeds could

not be diverted from their declared use by any act of the party whose life was thus insured.

These decisions appear to be the foundation of the text in Bliss on Insurance, Sec. 317, where he says: "We apprehend the general rule to be that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as beneficiaries, and that there is no power in the person procuring the insurance by any act of his or hers, by deed or by will, to transfer to any other person, the interest of the person named."

To the same effect is Sec. 390 of May on Insurance.

That this principle is correct where the beneficiary in the policy is one to whose use and benefit the proceeds of the policy is made to inure by the positive provisions of the statutes, may be conceded, but it is not so clear that it is applicable, nor intended by the authors to be applicable to a case where a party insures his own life for the benefit of a third party, where the rights of the parties are unaffected by the statute, but are to be determined solely by the principles of the common law.

The Supreme Court of Minnesota in Ricker v. Charter Oak Ins. Co., 27 Minn. 193, and the Court of Appeals in Virginia, in the recent case of the Valley Mutual Life Co. v. Burke, basing their opinions upon the above statements of May and Bliss, hold it to be the doctrine of the common law, while the contrary is held in Clark v. Durand, 12 Wis. 223, Kerman v. Howard, 23 Wis. 108, and Foster v. Gile, 50 Wis. 608; Gambs v. Mut. Life Ins. Co., 50 Mo. 44, and in Charter Oak Life Ins. Co. v. Brent, 47 Mo. 419, and the right of the insured, with the consent of the insurer, to change his beneficiary, fully maintained.

The policy in this last case was not within the Missouri statute, and the court notes a distinction between such and those held by the same court in other cases to be within it. See also Olmstead v. Keys, 85 N. Y. 393, where the same distinction is made.

If this case depended upon the determination of this point alone, we should be disposed to follow the rule of the Wiscon-

Johnson et al. v. Van Epps.

sin and Missouri courts, as their opinions seem to us to be founded upon the better reasons.

Where a party insures his own life by policy running to him, and in which the covenant to pay a third party upon the death of the insured is made with the insured, and his money pays the premiums, and the policy is retained by him, we must confess that we know of no principle of the common law that would prevent him, if he finds that the beneficiary named has become an unworthy object of his bounty, or his circumstances have so changed that it is essential to his own future welfare and comfort to make such policy available to supply his wants, from surrendering such policy, with the consent of the insurer, and taking another for his own benefit, or for the use of some other person, or otherwise varying its terms as the parties to it may agree.

In the absence of any statute affecting the question, we think the true rule in such cases is, that the beneficiary named in the policy, while taking such an interest in it as entitles him to receive the money when by the terms of the contract it becomes payable, to the exclusion of the heirs or personal representatives of the insured, yet such interest is subject to the right of the insured, who pays the premiums and retains control of the policy, to dispose of it, or to change the beneficiary at least, with the consent of the insurer.

We do not understand that these views are in conflict with the case of Glanz v. Gloeckler, 104 Ill. 573, for there the contract of insurance was not with the father, but the daughter; the policy was in her name as the insured, although the life insured was that of the father.

The legal rights of the parties were the same as though the daughter had taken out the policy upon her father's life upon her own application.

The legal status of the parties under the contract was not changed because the father had seen proper to advance the premiums for the child, and it was held that her administrator was the owner of the policy.

If the covenants in the policy had been with the father, and his daughter named as the one to whom the proceeds should

be paid upon his death, and she had died in his life-time, it is apprehended that the decision would have been different; for where such a contract is not affected by any statute, the rule appears to be that in case the beneficiary in a life policy dies before the insured, the policy is to be considered as though no particular beneficiary had been named therein.

But if we should be incorrect in the view that the common law permits the insured, under the circumstances above supposed, to dispose of his policy where a particular person is named as a beneficiary, we pass to the consideration of another question, less doubtful, arising upon this branch of the case.

It is conceded that, as Mrs. Judith Johnson died before her husband, the first certificate is to be treated the same as if her name did not appear in it. Thus considered, the amount of the policy was to be paid to the "legal representatives" of said insured upon his death, and admitting, for the moment, the claim of appellants, that the term as used here is to be construed as "heirs," then the policy was one to pay to his heirs generally and to no particular persons.

We have been referred to no case, and it is believed that none exists, which holds that the doctrine as stated in the works of Mr. Bliss and Mr. May, above referred to, is applicable to a policy made payable to the "heirs," the "legal" or "personal representatives" of the insured, in general terms. See Wason v. Colburn, 99 Mass. 342; Bison v. Wilkerson, 3 Sneed, 565.

Questions have been made between the administrator and the heirs, concerning the direction the fund should take under policies payable to the "legal representatives" of the insured. Such was the case of Loos v. John Hancock Ins. Co., 41 Mo. 538, where it was held the heirs were entitled to the money in preference to the personal representative, and the case of Wason v. Colburn, 99 Mass., 342, where a contrary conclusion was reached.

Whatever construction may be given the term where the question arises after the death of the insured, and there has been no disposition of the policy during the life insured, we

Johnson et al. v. Van Epps.

are clear that neither the "heirs" nor the "legal representatives" are such beneficiaries, within the rule contended for and giving it the full effect claimed for it, as acquire a vested interest in the policy and its proceeds to the extent of depriving the person insured of the power of disposing of the policy during his life-time in any way he may desire, with the consent of the insurer.

It is confidently asserted that no well considered case can be found that denies to the insured the right of disposing of the policy under such circumstances.

Besides we are not satisfied that the term "legal representatives" in this certificate was intended to be used in the sense of "heirs" or "next of kin." By the ordinary and professional meaning of the words, executors or administrators are understood, and while they are flexible and may be construed, under certain circumstances, as referring to heirs or assigns (Warnecke v. Lembca, 71 Ill. 91; Bowman v. Long, 89 Ill. 19; Loose v. Ins. Co., 41 Mo. 538), there must be something in the subject-matter of the contract, the context or surroundings that requires a departure from the usually accepted meaning before the forced construction will be adopted and acted upon by the courts.

No such circumstances exist in this case that would authorize us to adopt the construction contended for by appellants.

We have no doubt that Mr. Johnson during his life-time, so far as concerns these appellants, had the entire ownership in the first certificate with full power to dispose of it in any manner he pleased.

It is next insisted that the appellee could not become a beneficiary in the substituted certificate for want of an insurable interest in the life of Mr. Johnson.

We shall not attempt to fully notice the decisions defining and explaining the necessity of, and the extent and character of the interest that a party must have in the life insured, to uphold a policy taken out by such party upon the other's life, as we do not think that question is involved in this case.

This contract of insurance was with Mr. Johnson, taken out

by him in the first instance for the benefit of his wife, if she survived him; if not, then the proceeds became a part of his estate, and she having died before him, he, with the consent of the insurer, changed the beneficiary and surrendered the first certificate in consideration of the second, by this method providing for himself a comfortable home and support during the remainder of his life. By this change of certificates he did not cease to become the insured.

The consideration for this second certificate, as stated in it, was received from Mr. Johnson, the assessments are to be paid by him, and the promises and agreement therein are with him, his executors and administrators, to pay the sum assured to Mrs. Van Epps.

It is, therefore, a case where a man insures his own life and by the mutual agreement of the contracting parties a third person is designated to receive the proceeds when due, instead of the personal representatives of the insured.

Whether such a contract of insurance is void, as being within the prohibition of the law against gaming or wagering policies, in our opinion does not depend so much upon the extent or character of the interest, or the want of interest, in such beneficiary as it does upon the intention of the parties in procuring such insurance. Upon this point Mr. Bliss, in his work on Insurance, Sec. 26, says: " A person has undoubtedly an insurable interest in his own life, and that interest supports a policy, whether he makes the loss payable to himself, his executors or his assigns, or to a nominee or appointee named in the policy. Nor is a policy obtained by one on his own life for the benefit of another, which latter advances the premiums, necessarily void."

" The question is whether the policy was in fact intended to be what it purports to be, or whether the form was adopted as a cover for a mere wager. If the plaintiff and the insured confederate together to procure a policy for the plaintiff's benefit, when he is not and does not expect to be a creditor of the insured, and with a view of having the policy assigned to him without consideration, the policy is void."

In Campbell v. New England Mut. Life Ins. Co., 98

Mass. 381, one Andrew Campbell obtained a policy of insurance upon his own life for the use of the plaintiff, who was the wife of a brother of the insured, and a want of interest in the beneficiary was the ground of defense. Upon this point the court says: "The policy in this case is upon the life of Andrew Campbell. It was made upon his application; it issued to him as the assured; the premium was paid by him; and he thereby became a member of the defendant corporation. It is the interest of Andrew Campbell in his own life that supports the policy. The plaintiff did not, by virtue of the clause declaring the policy to be for her benefit, become the assured. * * * It was not necessary, therefore, that the plaintiff should show that she had an interest in the life of Andrew Campbell by which the policy could be supported as a policy to herself as the "assured."

This case is approved in Stevens v. Warren, 101 Mass. 564, where it is further observed that if it should appear that the arrangement was a cover for a speculating risk, contravening the general policy of the law, it would not be sustained.

The case of Olmstead v. Keyes, 85 N. Y. 597, reviews the prior decisions of that and other courts upon the validity of assignments of policies of insurance as affected by the interest of the assignee in the life insured, and also upon the right of the beneficiary named, where no such interest is shown.

After such a review of the authorities, the court say upon this point: "The rule as gathered from these authorities is that where one takes out a policy upon his own life as an honest and *bona fide* transaction, and the amount insured is made payable to a person having no interest in the life, or where such policy is assigned to one having no interest in the life, the beneficiary in the one case, and the assignee in the other, may hold and enforce the policy, if it was valid in its inception, and the policy was not procured or the assignment made as a contrivance to circumvent the law against betting, gaming and wagering policies. It follows, therefore, that one may with the consent of the insurer, deal with a valid life policy as he could with any other chose in action, selling it,

assigning it, disposing of it, and bequeath it by will, and it has been well said that if he could not do this, life policies would be deprived of a large share of their utility and value."

"It can not be questioned" say the Supreme Court of Indiana, in Provident Life Ins. Co. v. Baum, 29 Ind. 236, "that a person has an insurable interest in his own life, and that he may effect such insurance, and appoint any one to receive the money in case of his death during the existence of such policy." "And he may," say the Supreme Court of Vermont, in Fairchild v. North Eastern Mut. Life Association, 51 Vt. 613, "effectuate this object by assignment of the policy, or by immediately appointing such person as beneficiary."

To the same effect are the cases of Clark v. Allen, 11 R. I. 439; Mallory v. Trav. Ins. Co., 47 N. Y. 52, and Lemon v. Phœnix Ins. Co., 38 Conn. 294.

In Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457, where the question of what constituted an insurable interest arose, it was said: "A man can not take out insurance on the life of a total stranger, nor on that of one who is not so connected with him as to make the continuance of the life a matter of some interest to him. It is well settled that a man has an insurable interest in his own life and in that of his wife and children; a woman in the life of her husband; and the creditor in the life of his debtor. Indeed, it may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another, creates an insurable interest in such life. And there is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend, or two or more persons on their joint lives, for the benefit of the survivor or survivors. The old Tontines were based substantially on this principle, and their validity has never been called in question."

And again in the same volume, page 561, in the case of the Ætna Life Ins. Co. v. France, where the policy was upon the life of Andrew J. Chew, expressly for the benefit of his sister, Lucella P. France, the court below held it was a contract between the company and Chew, with a stipulation that the money should be paid to his sister, and sustained the policy.

The court say : "W.e concur in the construction of the policy made by the court, and in the validity of the transaction. As held by us in the case of the Connecticut Mutual Life Insurance Company v. Schaeffer, *supra*, p. 457, any person has a right to procure an insurance on his own life and assign it to another, provided it be not done by way of cover for a wager policy; and where the relationship between the parties, as in this case, is such as to constitute a good and valid consideration in law for any gift or grant, the transaction is entirely free from any such imputation. The direction of payment in the policy itself is equivalent to such assignment." See also Guardian Mut. Life Ins. Co. v. Hogan, 80 Ill. 35.

It would seem from the above authorities that where a person takes out an insurance upon his own life, for the benefit of some third person, who may not have an insurable interest in the life insured, the question whether it is a gambling or wagering policy, is in every case one for the jury to determine under proper instructions, and if it be found that the insured has been the principal actor in the transaction, and has entered into it with an honest purpose to aid one whom he deems a proper object of his bounty, the transaction will be sustained and the beneficiary be entitled to the money; but, on the other hand, if it appear that the party insured is but a mere nominal party, and he procured the insurance for the purpose of giving the beneficiary the advantage of such insurance upon his life, when the beneficiary could not obtain it in his own name, the transaction will be condemned and the policy declared void.

The cases of Cammack v. Davis, 13 Wallace, 643, and Warnock v. Lewis, 104 U. S. 775, have been cited as announcing a rule different from that in the two cases cited *supra*, from the 94 U. S.

There is nothing stated in Warnock v. Lewis that indicates any intention upon the part of the court to overrule, modify or question the doctrine held in the two cases above quoted from by us, and a careful examination of the cases referred to lead us to believe they are not necessarily in conflict with the

others. In both cases cited by counsel the question arose as to the validity of an assignment of a policy by the insured, and although the cases apparently proceed upon the broad principle that an assignment to a person having no insurable interest is invalid, they are explainable upon the ground that in both cases there was the clearest evidence that the assignee was the real principal who procured the insurance and paid the premiums, and that the entire transaction was but a mere shift and device to evade the law against wagering policies. Of like character is the case of Gilbert v. Moose, Vol. 16 of Reporter, 699, from the Supreme Court of Pennsylvania, where the fact found was that the assignee took the policy for speculative purposes, and upon this point being reserved the court held the assignment void. It is true that the court denied the right of assignment in all cases to an assignee having no interest in the life insured, under the decisions of that State and the cases of Cammack v. Lewis, and Warnock v. Davis, *supra.*

In the case of Franklin Life Ins. Co. v. Hazzard, 41 Ind. 116, one Cone insured his life for $3,000, and concluding to let the policy lapse, sold it to Hazzard for $20, who held it as a mere matter of speculation. Hazzard having no interest in the life of Cone, the assignment to him was held invalid, because he was a mere speculator upon the probabilities of human life. The court in this case refer to the case of Stevens v. Warren, 101 Mass. 564, as stating the correct doctrine upon this subject, and base the decision upon it. In that case the policy was assigned without the consent of the company and in violation of the contract of insurance, to one having no interest, and in passing upon the question the court said: "The rule of law against gambling policies would be completely evaded if the court were to give to such transfers the effect of equitable assignments, to be sustained and enforced against the representatives of the assured.

"When the contract between the assured and the insurer is expressed to be for the benefit of another, or is made payable to another than the representatives of the assured, it may be sustained accordingly. The same would probably be held in

case of an assignment with the assent of the insurer. But if the assignee has no interest in the life of the subject of insurance which would sustain a policy to himself, the assignment would take effect only as a designation, by mutual agreement of the contracting parties, of the person who should be entitled to receive the proceeds when due, instead of the personal representatives of the assured. And if it should appear that the arrangement was a cover for a speculative risk, contravening the general policy of the law, it would not be sustained."

It will be seen by a comparison of the opinions in the cases of the Ætna Life Ins. Co. v. France, and the Conn. Life Ins. Co. v. Shaeffer, *supra*, with the opinions of the same court in Cammack v. Davis, and Warnock v. Lewis, that they are really based upon the principle so clearly stated in the case in 101 Mass., as in the former two cases the policy was made payable to a third party as beneficiary, and was sustained, while in the latter two the policies being assigned to a party having no interest, and it appearing they were taken by the assignee as a mere speculation, and the transaction was but a mere cover to evade the law, the assignments were held void. The same distinction is made in the two Indiana cases above cited. In Provident Life Ins. Co. v. Baum, 29 Ind. 236, the defense interposed of a want of interest in Baum, the beneficiary, did not avail; in the case in the 41 Ind., the assignment, being taken for speculation, was held invalid.

If these various decisions can not be harmonized upon some such ground as suggested, then it must be admitted that there is such a hopeless conflict of opinion, not only between the courts of the various States, but between the different decisions of the same court, as to furnish no material aid in determining the question under consideration.

Considering the question in the best light obtainable from these and other decisions, as well as upon principle, we adopt the rule heretofore stated by us, being, as we believe, more in accordance with that policy of the law which requires us, while recognizing and maintaining the interests of society, to interfere as little as possible with the liberty of the citizen

to control and dispose of his own in good faith, for his own benefit in any manner he may see fit.

Can it be said that there is any law that prevented Mr. Johnson from making use of his only available means to keep himself from becoming a pauper, and from procuring with it a home—the care and comforts he required during life and a Christian burial after death?

Must he let the policy lapse, for inability to pay the accruing assessments, thereby depriving himself of the present means of support, and no one receive any benefit from it after his decease? Or must he keep it in force for the benefit of his collateral kindred, who, if we are to take his proven statements, have no great claim upon his bounty?

If such is to be the policy of the law in this State, I do not propose to be the one to take the initiative in so declaring it.

As to the good faith of Mr. Johnson in changing the terms of the policy making the proceeds payable to Mrs. Van Epps we entertain no doubt. The insurance was taken out years before. The exchange of certificates was a method adopted by the contracting parties to designate a new beneficiary.

This was done by the consent of the insurer and it is still satisfied with the contract. Mr. Johnson received a valid consideration and one entirely satisfactory to him even to the hour of his death. By this act Mr. Johnson deprived no one, to whom he was under any moral or legal obligations, of a single cent that they were entitled to.

Under such circumstances we fail to see why the intention of the parties should not be carried out.

As the decree of the circuit court effectuated such intention, we affirm it.

Decree affirmed.