On Application fob a Reheabing.
The opinion of the court was delivei*ed by
"Watkins, J.
On the 5th day of January, 1852, the defendant issued a policy of insurance on the life of James M. Putnam for $5000, -of which Mary S. Putnam, his wife, was named as beneficiary. , ■
*741 Opon, certain representations, that policy was, by the assured, surrendered to the company, and on the 29th of January, 1868, it issued a second policy of exactly the same tenor as the former one, except in respect to the name of the beneficiary, which is stated in the latter-to be Emmett Putnam, brother of the assured. The suit of Amelia M. Putnam et al., widow and heirs of Emmett Putnam, substituted beneficiary, is brought on the policy of 1868, while that of Mary S. Putnam is brought on the policy of 1852, she being the surviving wife-of the assured, and the first named beneficary.
By consent the two cases were consolidated and tried together,, and, on the trial, there was judgment against the company, and in favor of Mrs. Mary S. Putnam in one ease and in favor of the company, and against Mrs. Amelia M. Putnam et als., dismissing their suit, in the other, two separate decrees having been rendered. From each one of those judgments, the losing parties, respectively, have appealed.
I.
With regard to Mary S. Putnam, beneficiary in the surrendered policy, the case appears to be as follows, viz:
As to her, the company’s contract was complete in its incipiency, and never changed, thereafter, with her consent. In law, this policy inured to hor separate, paraphernal benefit, though not separate in property from her husband, the insured, and its character of paraphernal property could not be changed to that of separate property of the husband or that of the community without her consent, lawfully obtained. As such, it could not be placed as security for the husband’s debts. To this effect there are many authorities. Succession of Kugler, 23 An. 455; Succession of Herring, 26 An. 326; Succession of Clark, 27 An. 269; Succession of Bofenschein, 29 An. 714; Pilcher vs. N. Y. Life Insurance Co., 33 An. 322.
This principle obtains, also, in the State of Connecticut: Vide Lemon vs. Life Insurance Company, 38 Conn. 294. Also, in New York: Vide Barry vs. Bruno, 71 N. Y. 62; Barry vs. Life Insurance Company, 59 N. Y. 587; and Dalton vs. Willner, 52 N. Y. 312.
All the premiums were paid on this policy prior to the 29th of January, 1868, by James M. Putnam, the insured, and to that date it was kept in force.
The tendency of the proof is to show that, in 1868 and prior to that date, James M. Putnam was indebted to his brother, Emmett Putnam, *742 in the sum of about $2000, and, in order to secure its payment, the policy first issued and just described was surrendered and another issued in its stead, in which Emmett Putnam is named as the beneficiary. The claim and contention of Mary S. Putnam are, that, as to her, the policy of 1852 was unaffected by the attempted substitution of a new one, in 1868, without her knowledge or consent; and that -she is entitled to recover of the insurer the full amount thereof and without regard to the existence or non-existence of the substituted policy.
In Pilcher vs. New York Life Insurance Company, 33 An. 322, the same question arose and was decided in favor of the wife, as the beneficiary named in the surrendered policy, the court deciding that as to her, the policy substituted was not a new one, but merely a continuation of the first one.
In that case the point was made that, after the surrender of the old and the issuance of the new policy, payments of premiums were made by the assigns thereof, and'for that reason she could not recover the whole sum insured.
But we maintained her demand, holding that it mattered not that she herself had not paid the premiums after the substitution had taken place, because “it was not required that she should herself make the payments; vitality being preserved in the policy in her favor no matter by whom the premiums were paid, as they were paid on a policy which, as to her, -existed in her favor.”
The only case we have been able to find, which is opposed to that theory, is Landmen vs. Knowles, 22 N. J. Eqy. 594. The facts of that case were, that the mother of complainant entered into a contract with an insurance company to insure the life of their father, and she paid the premiums annually up to the date she assigned the policy to a creditor of the insured; and, subsequently, the premiums were paid by the assignee.
Upon the happening of the death of the father, the beneficiaries named in the first policy claimed the full amount of insurance, on the ground that the policy issued for their benefit, and the gift was fully executed by their mother, and its revocation was beyond her power. The assignees contested their claim,.insisting on his rights under the second policy. The _courfc held the plaintiffs entitled to the full value of the policy up to the time it ceased to be kept alive by their mother; but, construing the assignment as an evidentinten *743 tion on her part to make no other payment of premiums, and the act -as equivalent, in effect, to a forfeiture of their interest therein, it construed the payment of premiums by the assignee, subsequently, as the perpetuation of a right acquired thereby, and which fully vested in him, and recognized his demand to the extent of the value of the policy, less the interest of the first beneficiaries, as specified.
But the doctrine of the Pilcher ease is founded in reason and on authority, and'must' control. Burroughs vs. Life Assurance Co., 97 Mass. 359; Knickerbocker Life Insurance Co. vs. Wiltz, 99 Mass. 159; Life Insurance Co. vs. Burroughs, 34 Conn. 305; Chapin vs. Fellowes, 36 Conn. 132; Lemon vs. Life Insurance Co., 38 Conn. 294; Life Insurance Co. vs. Brant, 1 Ins. Law Journal (Mo.) 38; Barry vs. Brune, 71 N. Y. 282; Barry vs. Life Assurance Co., 59 N. Y. 589.
The general doctrine is formulated in Bliss on Life Insurance, Sec. 348, thus;
“It will be perceived that, in all these cases, the principle is maintained that no person other than the persons designated in the policy can assign or surrender it, and that in such assignment or surrender all the persons must concur, or the interest of those not concurring is not affected.”
In Barry vs. Brune, supra — a case almost parallel to the instant one — the court said:
“ It is clear that the old policies were the consideration of, and the inducement to, the new policies. The new policies could not have been obtained but for the possession and surrender of the old policies ; and the premiums upon the new policies were paid in part by cash dividends due upon one of the old policies. Bruñe thus, by means of the possession of the old policies which belonged to the plaintiff, and by using and surrendering them, obtained the new policies. The real substance of the transaction was a substitution of the new policies for the old, for the purpose of getting security which the old one did not give him. Under the circumstances of this case, both upon reason and authority, the substituted policies, in equity, take the place of the old policies, and the money payable thereon must go to the party entitled under the old policies. For this conclusion there is abundant reason and authority.”
Hence we take it to be perfectly clear, that Mary S. Putnam, beneficiary in the surrendered policy, is entitled to recover against the insurance company.
*744 2. Whether or not the widow and heirs of Emmett Putnam are entitled also to recover from the company, under the substituted policy of 1868, must depend mainly on a question of fact, rather than one of law. For it is plain that the defendant can be held but once liable, if. it made but one contract of insurance, unless, as we determined in the Pilcher case, it has, by its own act, attached to the policy “ a new character and liabilitj^, and by mere change of date, and name of beneficiary,” given it validity to different parties, and tlnis created a double obligation on itself.
In the instant case, the defendant company issued a policy in 1852 on the life of James M. Putnam. In 1868 that policy was surrendered and a new one issued, in all respects similar to the former, the only differences between the two being in date and name of payee. Premiums were paid on the old policy, up to the date of its surrender, and on the new one after its issuance.
The company did not exact or receive double premiums. On this statement it is clear that the question of defendant’s responsibility to the widow and heirs of Emmett Putnam must be determined on the principles of equity and estoppel. This is the contention of their counsel, for, in his brief at page 5, he says: “The New York Life Insurance Company having issued the policy herein sued upon, is estopped from denying its validity; first, because, by issuing the policy as it did, it secured an advantage to itself, in that it obtained by the transaction two parties who were interested in keeping the policy alive by the payment of premiums, whereas before it had only had one; second, in that by issuing the policy, it asserted certain facts to be true, on the faith of which Emmett Putnam was induced to change his position.”
(а) On the first proposition but little need be said, as it appears to us that there are just as many persons who had an interest in keeping the premiums regularly and promptly paid before the surrender of the old policy as after the issuance of the new one, viz: The insured and the beneficiary — though it was not, perhaps, the same interest.
(б) What are, then, the facts which the company, by issuing the policy of 1868, asserted to be true, “on the faith of which Emmett Putnam was induced to change his position.”
It is not pretended that Emmett Putnam became the creditor of his brother James, the insured, after the substituted policy was *745 issued in his name as beneficiary. It is not claimed that after the issuance of this policy Emmett Putnam permitted his brother James to increase his indebtedness to him by'loans of money, or otherwise. It is not contended that Emmett agreed with James to accept this policy in payment of a debt then due; or as a pledge or security for a debt, secured by other pledges or securities which were released. No. The counsel of the widow and heirs says, in his brief, on same page:
“ This policy was evidently given to him by James M. Putnam, when Emmett Putnam was seeking to collect (a) pi'e-existing debt. When ho received the policy, he desisted from any attempt to collect it, and, during the twenty years which followed, neither he nor his heirs took any steps to collect that debt. They had been led to believe by the insurance company that they were perfectly secure (it), having undertaken to pay to them the sum of |5000, upon the death of James M. Putnam.” (Italics ours.)
Upon this statement, it is manifest that the substituted policy was only intended, ©r regarded, by Emmett Putnam as a pledge for the security of the pre-existing debt of James M. Putnam, and, hence, neither he nor his heirs, “ during the twenty years which followed,” took any steps “to collect that debt;” and that the effect of the company’s issuance of the substituted policy was not to induce action on the part of Emmett Putnam, but to superinduce inaction and delay on his part. It is not claimed, and the proof does not show, that James M. Putnam was solvent in 1868, when the new policy was issued, and became insolvent thereafter, and that Emmett Putnam, as a creditor of his, suffered injury thereby. The settled jurisprudence is that possession by a creditor of a debtor’s goods, as collateral security for the debt, both interrupts and suspends prescription, during the period of possession, hence no prescription has run against Emmett Putnam’s right of action against the succession of his brother.
The fact of James feeling constrained to resort to such an expedient as he did to secure his brother’s claims leads to an inference of his insolvency at that time; therefore Emmett could have sustained no injury. But it is contended that Emmett Putnam paid premiums on the new policy, and that fact is cited to instance a change of his former position. But this position is not borne out by the evidence. It shows conclusively that James M. Putnam paid premiumsYn the *746 substituted policy for many years, and until after the death of Emmett Putnam. That after the latter’s death a friend of his widow-paid a part of the premiums for the years 1884, 1885, 1886 and 1887. That the inshred died in 1887. These payments were: For 1884, $16; for 1885, $53.87; for 1886, $57.75; for 1887, $57.25 — aggregating in amount $172.37; whereas the amount of annual premiums specified in the policy is $112. It is manifest that the “reversionary dividends” due the policy holders were utilized, and the amount of cash employed in the payment of premiums was correspondingly reduced.
Counsel further argues that the new policy was “ a separate and distinct liability” of the company, and that its promise was unconditional. An examination of the policy will show evidences to the contrary. Some of its recitals are as follows, viz: First, “ And the said company do hereby promise and agree' to and with the assured * * * well and truly to pay * * * the said sum assured to the said E. Putnam, * * * deducting therefrom all notes or credits for premiums on this policy, also old notes on previous policy, same number, unpaid at that time.” Second, “ And it is also understood and agreed by the within assured to be the true intent and meaning hereof; that if the declaration made by or for the said James M. Putnam in the application for a policy or any part thereof, and bearing date the 5th of January, 1852, and, upon the faith of which this policy is made, shall be found in any respect untrue, then and in that case this policy shall be null and void.”
These two paragraphs are quite sufficient for our present purpose. Instead of the new policy appearing on its face to be “ a separate and distinct liability” of the company, it appears that the “ old notes (due) on premiums ” on an old policy of same number were to be deducted from the. amount assured in the former; and that the declaration made by James M. Putnam in his application for a policy issued on his life on the 5th of January, 1852, was the one on the faith of which the one of 1868 was predicated, and for the verification of which Emmett Putnam, as beneficiary of the latter, was bound. By these two clauses the two policies were inseparably blended together, and the latter made to depend upon the former. Of this Emmett Putnam and his heirs and assignees were fully notified thereby, and by these recitals they are conclusively bound, as the latter are suing for the enforcement of this policy. It is a unit, *747 and can not be divided for or against itself, but it must be taken in its entirety.
• One of the distinguishing features of the Pilcher case was that the insured husband and the company were ascertained to have confederated^ together to make it appear as though there had been a default on the part of the former in the payment of premiums,, and that consequently the policy had lapsed. That thereupon a new policy, in appearance, issued, of which the assured and his assigns were the specified beneficiaries. When issued this policy was assigned for value, and passed into the hands of the bank.
' These acts we considered and construed to be a fraud upon an innocent third person, who had parted with his money on the faith of a policy containing no notice of its being a substitution, and whereby the company was estopped from showing the real state of the case, for its own relief and protection.
The principle on which estoppel is raised in such a case, is aptly stated by the New York court. They say: “Conduct of one party is an estoppel upon him only when it induces action in another, which can not be withdrawn from him without, loss.” Warring vs. Sanborn, 82 N. Y. 604; Payne vs. Burnham, 62 N. Y. 72; Bowen vs. Brown, 30 N. Y. 541.
■ May on Insurance says: “To constitute an estoppel there must be such conduct on the part of the insurer as would, if they were not estopped, operate as a fraud on the party who has taken, or neglected to take, some action to his own prejudice, in reliance upon it. When nothing has been done or left undone by the insured, in reliance upon the act, or the non-action of the insurer, there can be no estoppel.” Pages 771, 772.
Like precepts are found in all text books. 1 Greenlief, Sees. 22, 27, 207, 208; Bigelow on Estoppel, pp. 369, 473; 6 Waite on Actions .and Defences, 701.
These authorities are cited for the double purpose of showing their application to the Pilcher case, and their inapplicability to this one.
Our conclusion is that the judgments appealed from are correct in principle, but that they are subject to a slight modification in favor of the widow and heirs of Emmett Putnam, so as to allow them the sums expended in the payment of premiums, with interest.
It is, therefore, ordered and decreed that the judgments appealed from be so amended as to allow defendant in suit of Mary S. Putnam *748 a credit of the sum of $172.37, with 5 per cent, per annum interest from date of judicial demand, with costs of appeal; and so as to entitle the plaintiffs, Amelia M. Putnam et al., to recover of the defendant therein a like sum, with interest and costs in both courts. It is further ordered that the judgments appealed from be, in other respects, affirmed.