ELIZABETH H. PINGREY *vs.* NATIONAL LIFE INSURANCE
COMPANY.
CARA L. PINGREY *vs.* SAME.

Suffolk.    Jan. 13. — May 6, 1887.    HOLMES & GARDNER, JJ., absent.

An insurance company issued a policy of insurance on the life of A., payable to him as soon as the premiums, together with such other sums as he should pay, should amount to the sum insured. In case of his prior death the company agreed with A. to pay the sum insured to his mother. The policy further provided that, after the payment of two full premiums, it should not lapse. The intention of A. was to make the policy for the benefit of his mother, who furnished him with money to pay part of the first premium. The mother never had possession of the policy. A. subsequently married, and, without his mother's assent, surrendered the policy to the company, and took out a new one for the same amount payable to his wife. This policy contained the statement that it was a continuation of the first policy. A. died before his payments amounted to the sum insured. *Held,* that the first policy was a settlement in trust for the benefit of the mother, which A. could not revoke; and that the mother was entitled to the proceeds. *Held, also,* that the company was not liable on the second policy.

TWO ACTIONS OF CONTRACT upon two policies of insurance, issued by the defendant, a Vermont corporation, and payable to the plaintiffs respectively. The cases were submitted together to the Superior Court, and, after judgment for the plaintiff in the first case, and for the defendant in the second case, to this court, on appeal, upon agreed facts, in substance as follows :

The defendant, on May 25, 1874, issued its policy of insurance upon the life of Franklin A. Pingrey, on his application, he at that time being twenty-one years of age, containing the following clauses :

" As soon as the premiums paid, together with such other sums as he may choose to pay, improved annually at the average rate of interest received by the company after deducting *pro rata* expenses and losses, shall amount to the sum insured, the company agrees to pay to Franklin A. Pingrey the amount of three thousand dollars.

" In case of prior death, the said company do hereby promise to and agree with the assured, his executors, administrators, and assigns, well and truly to pay at their office the said sum insured to his mother, Elizabeth H. Pingrey, within ninety days after due notice and proof of the death of the said Franklin A. Pingrey, during the continuance and before the termination of this policy.

" After two full annual premiums shall have been paid, this policy shall not lapse for non-payment of premiums, but shall continue in force for the full amount insured, until all the assets belonging to the assured in the hands of the company at the time of the non-payment shall have been exhausted ; or, if the assured shall so elect, he may receive a paid-up policy for an equitable amount, or the company will purchase this policy at its equitable value."

On January 25, 1882, Franklin A. Pingrey surrendered said policy to the defendant, who, at his request, issued to him another policy, containing similar provisions to those set forth above, except that this policy was payable to Cara L. Pingrey, the wife of said Franklin A., in case of his prior death.

No new application for insurance was made by Franklin A. Pingrey, but, upon the surrender of the first policy for cancellation, the second policy was issued with the following indorsement

upon it: "Original Policy No. 9372 was issued May 25, 1874, of which this is a continuation, and is entitled to all its benefits." Elizabeth H. Pingrey never consented to the surrender of the first policy.

All the premiums on both policies were paid by Franklin A. Pingrey, the assured, when they came due, his mother, said Elizabeth H. Pingrey, and his sister together furnishing him with all, or nearly all, the money necessary to pay the first premium on the first policy; no sums besides the premiums were paid upon either of said policies.

Some time after taking out the first policy, Franklin A. informed his mother that he had taken it out, but she never saw it until about two years after the time of its issue, when one day he took it from the box where he had always kept it, as he was putting away other papers, and, holding it up, folded, told her that it was the policy; she never read the policy or knew its provisions, except that she understood from her son that he had taken out a policy for her benefit.

The insured always kept possession of said original policy until he surrendered it to the company to be cancelled as aforesaid, and he never delivered it to his mother.

On February 26, 1880, the assured married Cara L. Pingrey, and, on September 30, 1882, he died without issue.

At the time when the first policy was applied for, the assured, being then just twenty-one years of age, was living at home with his father and mother, with whom he had lived up to that time and continued to live until his death, the family at that time consisting of his father, mother, sister, and himself. His father was an invalid, and so continued until his death, which was subsequent to the death of the assured, and the household expenses were paid principally by his mother, who took boarders. The assured paid no board before May, 1876; from that time until October, 1880, he paid $3 per week to his mother, and after October, 1880, until his death, he paid her $8 per week.

From the time of his marriage, on February 26, 1880, until his death, his wife lived with him and his parents, and assisted in the affairs of the house, and lived as one of the family.

The first policy was obtained after consultation between the assured and the other members of the family, with the intention

of giving his mother the benefit thereof, he at that time being unmarried.

It is agreed that any objection that either action should be brought in the name of the administratrix of Franklin A. Pingrey, and not in the name of the plaintiff, is waived, and if an action would lie in any name for the benefit of the plaintiff, she shall have judgment.

*R. Stone*, for the plaintiff in the first case.

*H. G. Nichols*, for the plaintiff in the second case. 1. In the case at bar, the contract was in the first instance for the payment of the sum to the assured. The consideration was to move from him, and he was to have the benefit of the promise. Only in a certain contingency was the company to pay the amount to his mother. This plainly gave her no legal right against the company. She could not sue upon the contract. *Mellen* v. *Whipple*, 1 Gray, 317. *Burroughs* v. *State Assur. Co.* 97 Mass. 359. *Exchange Bank* v. *Rice*, 107 Mass. 37. *Bailey* v. *New England Ins. Co.* 114 Mass. 177. *Tripp* v. *Vermont Ins. Co.* 55 Vt. 100. *Tweddle* v. *Atkinson*, 1 B. & S. 393.

It will not be contended that, had the son paid sufficient premiums to make the policy payable at once to him, and had the company so paid it, the mother would have had any claim upon the fund. It is therefore clear that the mother had no vested interest, and it is submitted that it was a mere possibility of interest, liable to be defeated by any modification or change in the contract that the parties thereto might agree upon. The contract was between the company and the assured, and they alone had any legal right under it, and they had the right to annul, modify, or change the contract as they saw fit. *Johnson* v. *Van Epps*, 14 Brad. 201 ; *S. C.* on appeal, 110 Ill. 551. *Hencken* v. *United States Ins. Co.* 11 Daly, 282. *Clark* v. *Durand*, 12 Wis. 223. *Kerman* v. *Howard*, 23 Wis. 108. *Foster* v. *Gile*, 50 Wis. 603. *Gambs* v. *Covenant Ins. Co.* 50 Mo. 44. *Garner* v. *Germania Ins. Co.* 13 Daly, 255.

2. It is not necessary to hold that the second policy was absolutely a new policy, but the following points should be noted as bearing upon this branch of the case. In the original policy is the following provision : " After two full annual premiums, . . . . if the assured shall so elect, he may receive a paid-up

policy for an equitable amount, or the company will purchase
this policy at its equitable value." It is plain, therefore, that
the assured, at any time after the payment of the second pre-
mium, and during his life, had a right, and he alone had the
right under the terms of the contract, to sell the original contract
to the company and take the proceeds thereof to his own use.
It will hardly be contended that the mother would have had any
claim upon the proceeds of such a sale. It is submitted, that
there is no difference in principle between the transaction that
actually took place (i. e. the surrender of the first policy and the
issuing of the second) and a sale of the first for its equitable
value or a surrender in exchange for a paid-up policy.

If it be said that the first policy was a continuation of the
second, because of the indorsement on its face, " Original Pol-
icy No. 9372 was issued May 25, 1874, of which this is a con-
tinuation, and is entitled to all its benefits," it is submitted
that the plain meaning and intent of that indorsement was to
add to and protect the rights under the second, and not to
keep the first alive. Thus, the first policy having been sur-
rendered and cancelled, if the second should be forfeited by
non-payment of premiums for three years, or other default, as
provided in its terms, the assured would lose the benefit of the
premiums paid on the first ; this being plainly inequitable and
not the intent of either party, it was provided that the premiums
paid by the assured upon the first should accrue to his benefit in
any event upon the second. In other words, the contract was
an entirely new one, the old one having been cancelled, but the
premiums to be paid on the new were to be at the same rate
as if it had been issued at the date of the first, and the rights
which had accrued to the assured under the first were not to
be lost to him by reason of any default, on his part, on the
second. The second contract was a new contract, based on a
different consideration and containing different terms, conditions,
and provisions from the first, one of which was that the assured
should have certain benefits which had accrued to him under
the first.

3. There is nothing in the nature of a trust in a policy of in-
surance. It is purely of a contractual nature, a promise to pay
a certain sum of money, in consideration of the performance by

the assured of the conditions of the contract. Clearly no trust exists until the policy becomes payable. There is no subject matter of a trust, and no trustee. Who is the trustee? The company, which is under a contract liability to pay something on the happening of a certain contingency, or the assured, who has made a contract for the benefit of a third person, in a certain other contingency?

The cases which attempt to create a trust, by virtue of a policy of life insurance, are not well considered, and should not be followed by courts of this Commonwealth, in which no such doctrine has ever been established, and especially not in a case not strictly within the facts upon which such decisions are based.

Such cases have by no means been universally followed by other courts. In all the following cases it was held, even where the policy was payable directly to the third person, and not in the first instance to the assured, that by agreement between the assured and the insurer the policy could be surrendered and cancelled, and a new one in favor of a different person issued, without the consent of the person in whose favor the first one ran. *Johnson* v. *Van Epps*, *ubi supra*. *Union Ins. Co.* v. *Stevens*, 19 Fed. Rep. 671. *Swift* v. *Railway Aid Association*, 96 Ill. 309, 314. *Garner* v. *Germania Ins. Co.*, *ubi supra*. *Bickerton* v. *Jaques*, 12 Abb. N. C. 25. *Whitehead* v. *New York Ins. Co.* 102 N. Y. 143.

*A fortiori*, in the case of an endowment policy, the parties to the contract have a right to alter, modify, or annul the contract.

In *Pilcher* v. *New York Ins. Co.* 33 La. Ann. 322, the company was held to be liable upon both policies upon the ground of estoppel; and in some cases it has been held that the amount of the policy should be divided among the contestants, but upon just what basis the cases do not agree. *Landrum* v. *Knowles*, 7 C. E. Green, 594. *Lemon* v. *Phœnix Ins. Co.* 38 Conn. 294.

If the principles of contracts be applied to the contract of insurance, as we contend that they should be, the question is divested of all difficulty, and the rights of the parties can be easily determined. A policy of insurance is nothing more nor less than a contract, both in terms and effect. In the case at

bar it is not, in the first instance, even for the benefit of a third party. But a contract for the benefit of a third party cannot be enforced by such third party. As has been said by an eminent writer on the law of contracts, " In truth, a binding promise to A. to pay $100 to B. confers no right upon B. in law or equity. It confers an authority upon the promisor to pay the money to B., but that authority may be revoked by A. at any moment." Langdell, Cases on Contracts (2d ed.), Pt. II. Summary, p. 1021, § 62.

4. Although no case directly in point has been decided by this court, nevertheless the following cases seem to support the views contended for by us. In *Wason* v. *Colburn*, 99 Mass. 342, in which the policy was an endowment policy, and the promise was " to pay the sum insured to the said assured, or, in case of prior decease, to his heirs or representatives," Mr. Justice Chapman said, at p. 343, " It was primarily intended to be for the benefit of the assured himself, being an endowment policy for the period of ten years." See also *Brigham* v. *Home Ins. Co.* 131 Mass. 319; *Burroughs* v. *State Assur. Co., ubi supra.*

In the case at bar, the assured not only had the right to, but did, retain possession and control of the original policy up to the time of its surrender. This circumstance was admitted to be sufficient to give him the right to surrender it for cancellation, and take out another with a different beneficiary, in *Lemon* v. *Phœnix Ins. Co., ubi supra.* See also *Palmer* v. *Merrill*, 6 Cush. 282.

5. The insured paid the premiums. The fact that his mother and sister let him have the money to pay the first premium does not alter the case. It gives the mother no more right than the sister. The voluntary payment of premiums gives the payer no interest in the policy. *Howes* v. *Prudential Assur. Co.* 49 L. T. (N. S.) 133.

Nor is the mother helped by the fact, that, at the time of taking out a policy, the son intended it to be for her benefit, in case of his death before the necessary amount to make the policy payable had been paid. By the terms of the policy, as well as by retaining possession and control of the policy, the assured had a right to change his intention, and cancel, alter, or modify the contract with the assent of the insurer, and also to change and

revoke his original intention. *Johnson* v. *Van Epps*, and *Union Ins. Co.* v. *Stevens*, *ubi supra.* ·

The assured could by the terms of the contract, after the payment of two premiums, surrender it and take a paid-up policy, or sell the policy to the company for its equitable value, or he could cease to pay premiums and allow the policy to be forfeited, in part at least. Can any sound reason be given why he could not equally well surrender it and take in exchange for it, not money, nor a paid-up policy, but what he presumably preferred, a policy under which rights would accrue to his wife, for whom it was then his duty to provide? His circumstances having changed, his intention changed, and it is submitted that he had a right to do just what he did do, and that the wife is entitled to the whole of the amount of the policy.

6. But it is not necessary to destroy the validity of the first policy in order to establish that of the second. The company may well be held liable upon both policies. *Pilcher* v. *New York Ins. Co.*, *ubi supra.* The company by its voluntary act induced the assured to pay sufficient consideration for the second policy for the benefit of his wife, for whom he evidently wished and intended to provide. The second policy rests upon sufficient consideration. It would certainly be highly inequitable and contrary to all principles of contract to allow the company to escape liability upon a contract induced by its own act, and for which it received the full consideration demanded, which, but for such act and inducement of the company, the assured would not have paid. It is immaterial that the company, by reason of ignorance or carelessness, failed to cancel another contract which it intended to cancel at the time it assumed the new liability.

*B. E. Perry*, for the defendant.

C. ALLEN, J. The objection that the actions ought to have been brought in the name of the legal representative of the assured, if valid, is waived. *Bailey* v. *New England Ins. Co.* 114 Mass. 177.

Under the agreed facts, it does not appear that there is any statute of Vermont applicable to the case. The question presented, therefore, is to be decided on general principles, and is an open one in this Commonwealth. *Gould* v. *Emerson*, 99 Mass. 154.

It appears that, before the first policy was issued, there was an understanding between the assured and his mother and sister that it should be taken out for the benefit of his mother. In pursuance of this understanding, the mother and sister paid the first premium, or contributed money towards it. Afterwards, he told his mother that he had taken out the policy, and one day showed it to her. There appears to have been a full understanding between him and his mother that the policy was to be taken out for her benefit, and afterwards that it had been so done. In point of fact, it was made payable to her, and this was done with the intention of giving to her the benefit of it. This constituted a valid settlement in her favor. Nothing remained to be done by him to complete it. He might, indeed, afterwards fail to pay the annual premiums. This, however, does not prevent it from being a good trust. An unrevoked trust is valid, even though there is an express power of revocation. *Stone* v. *Hackett*, 12 Gray, 227. In this case, the assured reserved to himself no power of revocation, or of changing the beneficiary. It is true that he entered into no obligation to continue to pay the premiums; but the omission to do this did not have the effect to give to him an implied power of revocation. His mother might herself continue the payment of the premiums. Moreover, by the terms of the policy, after payment of two full annual premiums, it would not lapse, and certain valuable rights would still exist under it. Under these circumstances, the assured could not legally surrender the policy without his mother's consent, and her rights are not affected by such surrender. This seems to us to be the true rule, and it is supported by the weight of authority. *Chapin* v. *Fellowes*, 36 Conn. 132. *Lemon* v. *Phœnix Ins. Co.* 38 Conn. 294. *National Ins. Co.* v. *Haley*, 78 Maine, 268. *Barry* v. *Brune*, 71 N. Y. 261. *Landrum* v. *Knowles*, 7 C. E. Green, 594. *Manhattan Ins. Co.* v. *Smith*, 44 Ohio St. 156. *Ricker* v. *Charter Oak Ins. Co.* 27 Minn. 193. *Wilburn* v. *Wilburn*, 83 Ind. 55. *Weston* v. *Richardson*, 47 L. T. (N. S.) 514.

It is urged, in behalf of the widow of the assured, that the above rule should not be applied to the case of an endowment policy, like the present, where the whole sum covered by the policy was to be paid to the assured himself as soon as the

premiums and other payments should amount to that sum. But the assured died before the premiums amounted to that sum, and no other payments were made upon the policy, and therefore the amount of the policy did not become payable to him, but by its terms was payable to his mother. The fact that it might have become payable to him in a certain contingency, which did not happen, is immaterial. In *Lemon* v. *Phœnix Ins. Co.*, *ubi supra*, the policy was an endowment policy, but this fact was not dwelt upon in the decision, or, so far as appears, in the argument.

It is further suggested, that the defendant has incurred a double liability. But the second policy contains a statement that it is a continuation of the original policy. There is nothing to show any estoppel in favor of the widow. She paid nothing towards the premium, and in no way has altered her position in consequence of the issue of the second policy. Indeed, it does not appear that she was aware of its existence. Neither the assured nor the defendant intended to create a double liability. They undertook to do what they could not accomplish, namely, to transfer the benefit from the mother to the wife of the assured. There being no estoppel, the wife gained no rights by reason of what was done.

*Judgment affirmed.*