Minshall, J.,
dissenting. The policy sued on in this case was one with many features favorable to the insured and the beneficiary. 1. It insured the life of the hsuband for the benefit of his wife for the period of his natural life, in the sum of $1,000; 2. it was, from its execution, a maturing “endoivment policy” in favor of the insured, in a like sum payable at twenty years from its date on the continued performance of its conditions; 3. after three years’ premiums had been paid, and all notes for the same, it could be converted into “a paid-up, non-participating life policy” for an ^ amount indicated in certain tables, upon the surrender of the policy first given. Again, at its maturity as an endowment policy the insured, instead of receiving payment of $1,000, could apply it to the purchase of “an annual income for life of $95.58;” or, to the purchase of “a paid-up life policy” of $1,491, with particpation in profits on furnishing a satisfactory medical examination, or, on surrendering the policy, the company agreed that it would on August 14, 1911, pay in cash its entire reserve value and its proportion of the company’s profits combined, provided the policy should not have been previously determined by lapse or death. It also contained a provision for a “paid-up term policy” in favor of the wife, in these words: “In case of default for non-payment of premium after three years, and no legal surrender having been made, the insured having paid at maturity all notes given for premium, then this policy shall, without surrender, but upon payment of all outstanding premium notes, become a paid-up term policy, without change of terms or conditions except as to the payment of premiums and *396 participation in profits, and continue in force for such time as one annual premium on this policy is contained in its reserve value according to the American four per cent, table of mortality, at the end of which time this contract shall cease. If the insured shall die while the said term policy is in force, the amount of “foreborne premiums” with interest at six per cent, shall be deducted from the sum insured.”
It is on this provision in the policy that the plaintiff, the wife of the insured, asked a recovery, and on which a judgment was rendered in her favor, which was affirmed by the circuit court.
It is admitted that all the conditions requisite to a paid-up term policy had, on August 15, 1894, been performed — all premiums to that time had been paid, and there were no outstanding notes; and if nothing more had been done, she would, at the date of her husband’s death, have been entitled to $1,000, less the amount of foreborne premiums, with interest at six per cent., as the insured died within the term of such paid-up policy.
This is not disputed by counsel for the company, who has argued the case with much fairness, but I think, on a mistaken construction of the terms of the policy. The claim is that this stipulation was modified by a note given for the premium due August 15, 1894 (premiums being due and payable in advance) ; and which note contained this provision:
“Said policy, including all conditions therein for surrender or continuance as a paid-up term policy, shall, without notice to any party or parties interested therein, be null and void upon failure to pay this note at maturity, with interest at eight per cent, per annum payable annually. In case this note is not paid at maturity the full amount of premium shall be considered earned as premium during its currency, and the note payable without reviving the policy or any of its provisions.”
It is admitted in the pleadings that the wife was no *397 party to the note containing this provision; and that it was given without her knowledge or consent. That it materially varied the terms of the policy as to this particular feature, is apparent — it, in fact, blotted out the provision as to a paid-up term policy.
It is claimed, however, that the husband had the right to give such a note, without the assent of his wife, in the interest of himself and for the benefit of his wife — as the policy would have been void as to everything secured by it, except the paid-up term, unless he were permitted to give a note for the premium. The argument is maintained with much plausibility, but it is not sound. Whether it would have been to the interest of the wife, or not, to surrender the advantage of a paid-up term policy for other possible advantages that might result from giving a note is immaterial. She could not, as we shall presently see, be affected by agreements to which she was not a party, on the ground that it might be to her interest; she had the right to be consulted in the matter and determine for herself whether she would abandon an interest that had vested in her, for some cither advantage that might accrue from giving such a note.
The provision contained in the note is inconsistent with the terms of the stipulation as to a paid-up term policy; and if such stipulations may be avoided in this way, they might as well be stricken from their policies. They would be more deceptive than real. First, it will be observed, that the right to such a policy only arises upon the non-payment of premium after three years, and no surrender of the policy has been made. As it rests upon a non-payment of premium after a certain number of premiums have been paid, a subsequent failure in this regard during the term cannot affect it — the consideration for it being the premiums that had, without default, been paid; and any agreement which requires the subsequent payment of a premium or a note given *398 for it as a condition of its existence, is derogatory to it. To say that payments are required to preserve a paid-up policy, is a solecism in language. It cannot be a paid-up policy so long as payments are required to keep it alive as such policy: Again, it will be observed that foreborne premiums are to be deducted from the amount of the policy. This could not be if their non-payment works a forfeiture. In a case of forfeiture there is nothing to deduct from. It will be further observed, that on the happening of the conditions mentioned, it is to become a paid-term policy “without change of terms or conditions except as to payment of premiums and participation in profitsthat is, it will no longer participate in profits, nor be affected by non-payment of premiums.
The policy does, however, recognize the right of the insured to give, and of the company to receive, premium notes; and provides that a failure to pay them at maturity shall render the policy void; and from this it is argued that the note with the forfeiture clause in it as to the paid-up term policy, was authorized by the policy as issued. This policy, however, must as any other agreement, be construed together and such meaning given to it as will preserve all of its terms without impairing any of them, if that can be reasonably done; and like every instrument imposing a forfeiture it should be construed against the forfeiture, for forfeitures are not favored in law. There is, however, no difficulty in construing the language conferring the right to give notes for premiums with the provision that if not paid at maturity the policy should be void, so as not to affect a paid-up term policy that had previously accrued. As already pointed out, the policy has in it many features securing interests to the insured that are separate from those of the beneficiary; hence, in accordance with settled rules of construction, the effect of giving premium notes that are not paid at ma *399 turity, must be confined to the interest of the insured in the policy, and cannot be extended to an interest in the beneficiary that has already vested, unless by the consent of the latter. Unless that be the proper construction, a paid-up term policy would be defeated any time after it accrues, by the insured giving an ordinary note for unpaid premiums; and we should have the absurdity, that, whilst an accrued paid-up term policy would not be affected by a non-payment of premium, the non-payment of a simple note given for the premium would render it void. The company did not think so, else why was a clause forfeiting the paid-up term policy inserted in the note? It was only by the unauthorized clause inserted in the note that the policy in question was to become void by non-payment- — not by any provision in the policy or any note authorized by it to be given. A promissory note in the usual form is one thing, and a note with a forfeiture clause in it, is another and different thing. It is said in the opinion of the majority that as the premium note was not paid, therefore, by the terms of the policy, there was not a continuance of the paid-up term policy. 'The fallacy consists in this: The policy was a paid-up term policy, at and before the note was given. It was such policy in favor of the wife, whether another cent was paid, or note given, for premium for a period that included the death of her husband. The failure to pay the note, had there been no forfeiture clause in it, would not have prevented it from becoming a paid-up term policy — it had become such before the note was given. It is the very essence of a paid-up term policy that it cannot be affected by any default whatever. If the insured dies within the term, the amount is to be paid the beneficiary, after deducting foreborne premiums, and not in case premiums, or notes given therefor, are paid. As then the note given and on which the company founds its defense to the action was not within the purview *400 of the terms of the policy, and was nnauthorzied by the plaintiff, she is entitled to recover.
Where a policy of insurance is taken by one for the benefit of another, it is in the nature of an executed gift, or as said by some, is a settlement in trust for the benefit of the beneficiary; and it is settled laAv that after it becomes vested, it cannot be changed or affected Avitliout the assent of the beneficiary. Bliss Life insurance, section 339; Lemon v. Phoenix Ins. Co., 38 Conn., 294; Ricker v. Ins. Co., 27 Minn., 193; Pilcher v. Ins. Co., 33 La Ann., 322; Chapin v. Fellowes, 36 Conn., 132; Timagenis v. Ins. Co., 21 Fed. Rep., 223; 2 May on Insurance, Sect. 399 P; 2 Joyce on Insurance, Secs. 730 and 1651; Pingrey v. Insurance Co., 144 Mass., 382; Manhattan Insurance Co. v. Smith, 44 Ohio St., 163, 167; The interest of the beneficiary is so distinct from that of the person procuring the insurance, that even the acts or declarations of the latter are not evidence against the beneficiary. Insurance Co. v. Applegate, 7 Ohio St.,, 292; Insurance Co. v. Cheever, 36 Ohio St., 201. Hence, though the hsuband had the right to give a note for the premium that became due August 15, 1894, £e had not the right to stipulate therein that, if it Avas not paid at maturity, the paid-up term policy should become void. This term in the note exceeded his authority and did not therefore affect his AAife. If it had been omitted, the effect of the non-payment of the note would simply have affected his OAvn interest, and there being no authority for its insertion, the effect of the non-payment of the note on the interest of the wife is the same as if it had been omitted.
If, by the taking of a note for the premium (that is, a straight note, which he might have taken without the assent of his Avife) a paid-up policy did not then accrue, it did on the non-payment of the note, for then in the language of the policy “a default for non-payment of premium” occured. The default oc *401 cnrred May 1, 1895, as the note then matured, and was not paid. And whether the time of the term should be reckoned from the date of the note, or from its maturity and non-payment, is not material; as, in either case, the husband died within the period of the term.
I therefore concur in the first and dissent from the other propositions of the syllabus, and from the reversal of the judgment.
Williams, J., concurs in this opinion.