## JAMES H. PRESTON, Executor of A. W. CLEMENT, *vs.* CONNECTICUT MUTUAL LIFE INS. CO., OF HARTFORD.

*Life Insurance—Policy Payable to a Beneficiary or Legal Representa-*
*tives Creates Vested Right in the Beneficiary or His Executor—Es-*
*toppel—Insurable Interest—Endowment Policy.*

When a man takes out a policy of insurance on his life payable to his
mother or her legal representatives, and she dies in the lifetime of the
insured, the proceeds of the policy are payable to her executor or ad-
ministrator and not to the legal representatives of the insured, since a
policy of life insurance in favor of a designated beneficiary creates a
vested right in such beneficiary which cannot be impaired by any act of
the insured or of the insurer without the consent of the beneficiary.

The above-mentioned insured, after the death of his mother, wrote to the
insurer requesting that the policy be changed so as to make the same

payable to his heirs.   This was not done and additional premiums were thereafter paid.   In an action on the policy by the administrator of the insured, *held*, that the insurer is not estopped to deny the right of the plaintiff to maintain the action, since the company had no legal right to change the beneficiary of the policy ; and it makes no difference that the legal representatives of the beneficiary may have no insurable interest in the life, or that the insured was under no obligation to continue the payment of the premiums.

The rule that the beneficiary designated in a policy acquires a vested right at the time of the formation of the contract between the insurer and the insured is applied to endowment as well as to ordinary policies.

Appeal from a judgment of the Court of Common Pleas (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William S. Bryan, Jr.*, (with whom was *John Gill, Jr.*, on the brief), for the appellant.

On the face of the policy, on Mrs. Margaret Clement's death in the lifetime of her son, her inchoate interest in the policy ceased, and upon the death of Dr. Clement the insurance passed to his executor.

The contract was between the insurance company and the assured.   The beneficiary only had a right to receive the insurance money, because it was the intention of the parties to the contract that she should have it.   The whole matter turns on the intention as evidenced by the policy of insurance, when read in the light of surrounding circumstances.   Insurance policies, like all other written instruments, are to be construed according to the intention of the parties.   16 *Encyclopedia of Law* (2nd ed.) 862.

Dr. Clement intended, if he died in the lifetime of his mother to make provision for her old age ; he could have no conceivable object in providing for her executor or administrator. The clear meaning of the provision when read in the light of the relationship of the parties was that Dr. Clement intended that if he died, leaving his mother surviving him, she should receive the $5,000 as a means of support.   As the reason for

the intention for this provision for his mother was conditioned upon her surviving him, the intention was likewise conditional upon that contingency. And no provision was made in his intention for the contingency which actually happened, *i. e.*, that he should outlive his mother. It is somewhat analogous to a case where there is a trust to take effect on the death of the grantor in the lifetime of the *cestui que trust.* If the *cestui que trust* dies in the lifetime of the grantor of the trust, and the special trust fails, there would be a *resulting trust* to the grantor. There are many instances where this analogy to the doctrine of resulting trust has been applied in matters of life insurance. " If the debtor obtains the insurance on the insurable interest of the creditor, and pays the premiums himself, and the debt is extinguished before the insurance falls in, then the proceeds would go to the estate of the debtor. *Knox* v. *Turner*, L. R., 9 Eq. 155;" *Washington Central Bank* v. *Hume*, 128 U. S. 205; *Crotty* v. *Union Mutual Ins. Co.*, 144 U. S. 624.

Mrs. Maybrick feloniously killed her husband; there was a policy of life insurance effected by her husband on his life for her benefit. The trust for her failed on grounds of public policy, and the proceeds of the policy became a part of her husband's estate, by a resulting trust. *Cleaver* v. *Mutual Reserve Fund*, 1 Q. B. (1892), 153.

To the same effect is a case, in which a man insured his life and by his will bequeathed the insurance to his wife; she murdered him; and it was held that by so doing she forfeited the insurance, and that the right to it vested in the husband's personal representatives. *Quebec Official Rep.*, 9 Q. B. 499.

The very point we are contending for was decided in *Endowment Association* v. *Wood*, 4 Mackey (D. C.), 19. There are many other decisions substantially to the same effect. *Gambs* v. *Ins. Co.*, 50 Missouri, 44; *Johnson* v. *Van Epps*, 110 Ill. 551.

The general doctrine is illustrated also by the following decisions: A takes out a policy of insurance on his own life, payable to B, his daughter, on his death; B dies first. *Held*,

that the policy reverted to A's estate. *Ryan* v. *Rothweiler*, 50 Ohio St. 595. A procured a policy of insurance on his life, payable to B, his sister; she died first. He then surrendered the policy and took out another, payable to C, his nephew. *Held*, that the rights of the insured over the policy depended upon what his *intentions were* when he obtained the insurance, *as such intentions could be gathered from the surrounding circumstances*. *Bickerton* v. *Jaques*, 28 Hun. 119. In *Haskins* v. *Kendall*, 158 Mass. 227, it was held that a policy for the benefiit of a *wife* would be considered as giving her the right to the policy only in the event of her surviving her husband ; if she dies first there will be a resulting trust to his estate.

A certificate was made payable to *Loree E. Lyon, her heirs, administrators or assigns*. She was the wife of the insured and died before him. *Held*, that the representatives of the insured, and not of his wife, took the policy. `Lyon` v. *Rolf*, 76 Mich. 146. A man insured his life in a beneficial society for the benefit of his wife ; she died first. It was held that the estate of the husband took the fund. The Court said *that the husband's intention was to provide for his wife, and not for her next of kin*. *Expressmen's Aid Society* v. *Lewis*, 9 Mo. App. 416. A took out a policy for the benefit of his wife ; she died, and he then married again ; then A died. *Held*, that A's estate and not the estate of the first wife, was entitled to the insurance money ; that the first wife had a mere expectancy, which could not survive her. *Gutterson* v. *Gutterson*, 50 Minn. 278. On death of beneficiary in the lifetime of the assured the right to the policy reverts to the estate of the assured if the assured paid the premiums. *Tompkins* v. *Levy*, 87 Ala. 263.

There is no legal significance in the fact that the insurance money was to be paid to Mrs. Margaret Clement *"or her legal representatives."* These words do not change the conditional character of the interest which Mrs. Clement took as a beneficiary. The italicized words are merely words of limitation, and not words of purchase—to borrow a phrase from the law of real estate. They merely signified that if, and when, Mrs.

Margaret Clement's right to the $5,000 accrued, she should have the absolute and unconditional ownership of that sum. This was expressly ruled in *Endowment Association* v. *Wood*, 4 Mackey (D. C.), 19; *Lynn* v. *Rolfe*, 76 Mich. 146; *Johnson* v. *Van Epps*, 110 Ill. 551. The words "legal representatives" in insurance policies are always flexible in meaning. In *Robinson* v. *Hurst*, 78 Md. 59, Faulkner had assigned to Hurst a policy of insurance on his life, as security for money loaned, and shortly afterwards made an assignment for the benefit of creditors. The sum insured was, by the terms of the policy, payable on the death of Faulkner "to his legal representatives." The question was whether Hurst took the proceeds of the policy. The Court in its opinion contrasted the case with one decided by the Court of Appeals of New York, (*Griswold* v. *Sawyer*, 125 N. Y. 411), where an aged and heavily indebted father of a family, dependent on him for support, took out a policy of insurance on his life, payable to his "legal representatives." The New York Court held that it was payable to his wife and children, as it would be presumed that under the circumstances the *insured intended* to describe them by that term, rather than his executors or administrators. In *Robinson* v. *Hurst*, above cited, Faulkner's sole object was to reimburse Hurst the amount loaned ; and "both the insured and the insurer had construed the contract of insurance to be assignable." In *N. Y. L. Ins. Co.* v. *Armstrong*, 117 U. S. 598, where a policy on Armstrong's life was payable to his *legal representatives* after his death, it was held that the policy was assignable by the insured.

Apart from these cases, "the legal representatives" of Mrs. Margaret Clement, if they are to be taken as substituted beneficiaries for her in this life insurance policy, *would not have such an insurable interest in Dr. Clement's life* as would have sustained the policy for their benefit. The Supreme Court, in *Warnock* v. *Davis*, 104 U. S. 775, after stating that a person who had no insurable interest in the life of a deceased could not take out a policy in his own name, said: "The assignment of a policy to a party not having an insurable interest is

as objectionable as the taking out of a policy in his name."
And in *Crotty* v. *Union Mutual Insurance Company*, 144 U.
S. 623, it is said: "It is the settled law of this Court that a
claimant under a life insurance policy must have an insurable
interest in the life of the insured."

· The proper construction of the policy depends upon the
more general rule, that all written instruments are to be con-
strued according to their *obvious meaning*, even where it is nec-
essary to ignore or even reverse *the literal meaning* of the
terms employed.    In *McKenzie's case*, 85 Md. 132, a number
of cases are collected where the words of written instruments
were disregarded, and in some instances entirely reversed
when the meaning required it.    This Court said : "These au-
thorities and many others, which may be cited, show how
readily the Courts will brush aside the language of an instru-
ment when it stands in the way of its meaning."    See also,
*Burnett* v. *Bealmer*, 79 Md. 39; *Farrell* v. *Baltimore*, 75 Md.
493; *Trinity Church case*, 143 U. S. 458; *Lewis* v. *Fisher*, 80
Md. 142; *American Casualty cases*, 82 Md. 535.

As illustrating how far the Courts will go in disregarding
the literal meaning of terms in insurance policies, when their
literal construction would lead to absurd and unreasonable
results, two recent cases may be cited.    In *Parker* v. *Des
Moines Ins. Co.*, 108 Iowa, 117, it was held that a secret in-
tent on the part of the insured at the time of taking out a
policy on his life to commit suicide vitiates the policy
even as against the beneficiary named therein, *although
there is no provision for forfeiture in case of suicide*.    It was
held in *Burt* v. *Union Central Life Ins. Co.*, 105 Fed. Rep.
419, that where the assured was convicted of a felony and
was executed by legal process, the policy of life insurance
was avoided.    This was, following the House of Lords in the
*Fauntleroy case* (4 Bligh N. S. 194), put in part on the ground
of public policy.    The Circuit Court of Appeals, *although the
policy contained no provision for forfeiture in the event of execu-
tion for crime*, said : "The terms of the contract of life insur-
ance, it seems, would exclude the idea, as in the case of sui-

cide by the insured while sane, that death at the hands of the law *was within the contemplation of the contracting parties.*" So here we say that it was not within the contemplation of the contracting parties that Dr. Clement should survive his mother and that this insurauce fund should ultimately be divided between his brothers and his widow, rather than go to his widow under his will.

*Whatever may be the proper construction of the original policy of insurance, the appellee, by its course of dealing with Dr. Clement, has estopped itself from denying the right of Dr. Clement's executor to receive this insurance.*

Even if the "legal representatives" of Mrs. Margaret Clement originally had a claim under this policy, as soon as Dr. Clement heard of this possible claim, he stated his objection to it to Mr. Norwood, the agent of the insurance company. Dr. Clement was obviously unwilling to any longer pay premiums on a policy which was not for his own benefit. There was no longer any reason why he should do so. There was no obligation on him, either moral or legal, to pay these premiums ; and on his failure to do so, the policy would lapse. He continued to pay the premiums only on the understanding that the policy was to be for the benefit of his "own heirs, whoever they might be." And the subsequent premiums were received by Mr. Norwood, the agent of the insurance company, with full knowledge on his part that Dr. Clement was paying them on this understanding. This dealing had every element of a new and distinct contract. It would be a very gross fraud on the part of the insurance company for its agent to take Dr. Clement's money, and then refuse to give effect to the understanding under which the money was paid. It would, in its moral elements, very much resemble the gold brick scheme of the confidence men.

In 16 *Am. and Eng. Encyclopedia of Law* (2nd ed.) 868, it is said : "A policy of insurance may be modified by a new and distinct agreement, subseqently entered into by the parties or their authorized agents." And again : " Ordinarily every renewal of a policy of insurance is a new contract." On the

same page of the same work it is said that this new agreement may be by parol. So likewise in *Relief F. Ins. Co.* v. *Shaw*, 94 U. S. 574, it is said that a valid contract of insurance may be made by parol. See also *Eames* v. *Home Ins. Co.*, 94 U. S. 621 ; *Ins. Co.* v. *Colt*, 20 Wallace, 560 ; *Emery* v. *Boston Marine Ins. Co.*, 138 Mass. 409 ; *Mutual Reserve, etc.*, v. *Cleveland Mills*, 82 Fed. Rep. 513 ; *Phœnix Ins. Co.* v. *Ryland*, 69 Md. 437 ; *Mallette* v. *British Assurance Co.*, 91 Md. 471 ; *Metropolitan Life Ins. Co.* v. *Anderson*, 79 Md. 375.

*R. E. L. Marshall* (with whom was *Arthur Geo. Brown* on the brief), for the appellee.

The contract of insurance in this case is, by all the authorities, held to constitute a settlement in trust, in which the person procuring the insurance is the donor or settlor of the trust, the insurance company the trustee, the beneficiary named in the policy, the *cestui que trust*, and the policy the instrument of settlement, containing the terms of the trust. The rule is thus laid down : "An irrevocable trust is created. The person designated in the policy is the proper person to receipt for and to sue for the money. The legal representatives of the insured have no claim upon the money, and cannot maintain an action therefor if it is expressed to be for some one else." *Bliss on Life Insurance*, sec. 318 ; *Cook on Life Insurance*, sec. 76 ; 3 *Am. Eng. Ency. of Law*, 980. And in the same authorities it is said : " In ordinary life insurance, where no power of divestiture is reserved, the general doctrine prevails that the issue of the policy confers immediately a vested right upon and raises an irrevocable trust in favor of the party named as beneficiary, a right which no act of the insured can impair without the beneficiary's consent." See also *Bank* v. *Hume*, 128 U. S. 195 ; *Pingrey* v. *Ins. Co.*, 144 Mass. 374–382 ; *Timayenis* v. *Ins. Co.*, 22 Blatch. (U. S.) 405 ; *Brockhaus* v. *Kemna*, 7 Fed. Rep. 609 ; *Drake* v. *Stone*, 58 Ala. 133. In the case last cited the doctrine is thus clearly laid down : " We hold that under an ordinary life policy an interest vests in the person for whose benefit it is taken out when the policy is de-

livered, subject to be divested or forfeited upon non-payment of premiums as the policy may prescribe, and that on the death of the beneficiary either before or after the death of the insured, the fund arising therefrom goes by bequest or by succession as other personal assets of the beneficiary." See also *Waldrun* v. *Waldrun*, 76 Ala. 285 ; *Johnson* v. *Hall*, 55 Ark. 210 ; *Yore* v. *Booth*, 110 Cal. 238 ; *Griffith* v. *Ins. Co.*, 101 Cal. 627 ; *Ricker* v. *Charter Oaks Ins. Co.*, 27 Minn. 193 ; *Landrum* v. *Knowles*, 22 N. J. Eq. 594.

In the case in point, the settlement was complete immediately upon the issuance of the policy, and the donor, therefore, had only such power of revocation as was reserved in the policy. But an examination of the policy shows that there is nowhere any reservation of power in the donor. It is an unqualified agreement on the part of the insurance company— the trustee—in consideration of the premium paid and to be paid by the donor, to pay the sum insured to Margaret Clement, mother of the said insured, or her legal representatives. It follows, therefore, that the donor, having reserved to himself *no power of revocation in the premises*, is bound by the terms of the trust he has himself created, and cannot without the consent of the beneficiary alter or amend those terms in any respect.

Nor are his rights in this respect at all affected by the fact that the policy might have been terminated by a failure to pay the annual premiums as they fell due. It is true that he was under no obligation to pay the premiums and his act in so doing was purely voluntary, but the fact that he might have refused to pay them did not prevent the trust from being a good trust, nor did it give him any implied power of revocation. If he had refused to pay them, the mother or some one on her behalf might have done so, and the policy would have continued in full force. *Pingrey* v. *Insurance Co.*, 144 Mass. 374; *Anderson's Estate*, 85 Pa. St. 202; *Glanz* v. *Glockler*, 104 Ill. 573.

By the terms of the policy the money due under it was to be paid to "Margaret Clement or her legal representatives." It is submitted that the effect of this language was to vest an ab-

solute title in the beneficiary, which passed at her death to her representatives, just as any other chose in action would have passed. 3 *Am. & Eng. Ency. of Law*, 987; *Evans* v. *Opperman*, 76 Texas, 293. This follows immediately from the language of the gift. It is a settlement upon the beneficiary or her legal representatives, and the term "legal representatives" used in this connection has been held in this State to be equivalent to "executors, administrators and assigns." *New York Life Ins. Co.* v. *Flack*, 3 Md. 341; *Robinson* v. *Hurst*, 78 Md. 59; *Thomas* v. *Cochran*, 89 Md. 390; *Anderson's Estate*, 85 Pa. St. 202.

*As to estoppel.* Even if the appellee had consented to change the policy as requested, the decedent would have acquired no rights in the premises, and the proceeds would still have belonged to and been payable to the estate of the beneficiary. It was further argued below that in consequence of the receipt of premiums by the appellee after the notice to change the policy had been received, it would be estopped to deny that a new parol contract of insurance was not made between the appellee and the decedent, and even if the appellant was not entitled to recover on the original policy, he could recover on the implied contract.

It is sufficient to say that the declaration in this case is on the original written contract, and the demurrer is to the declaration filed in the case, and raises the question of the appellant's rights under the contract set out in his declaration and not under any other supposed contract he may have imagined, but has not declared upon.

But apart from these considerations, the appellant is not in a position to claim any relief by way of estoppel. He is himself estopped to invoke an estoppel by the conduct of his decedent. In his letter requesting the alteration of the policy, the decedent said: "I am surprised that the money goes to my mother's heirs. I supposed that on my death it went to my own heirs, whoever they might be. I wish to change the policy to read this now. It certainly would seem that I can do this without asking my brothers about it. *I have no idea*

*they would object, but it seems to me just as well that, if possible, they know nothing of it."*

The learned Judge below decided that no estoppel could arise under the circumstances of this case, for the reason that he who comes into equity must come with clean hands, and the application of this doctrine to the facts set out above obviously negatived the appellant's right to invoke an equitable doctrine.

Boyd, J., delivered the opinion of the Court.

The Court below sustained a demurrer to a declaration filed in a suit instituted by the appellant against the appellee and, the plaintiff having refused to amend, judgment on the demurrer was entered in favor of the defendant.   From that judgment this appeal was taken.  The declaration alleges that on the 18th of December, 1888, the defendant, in consideration of the payment by Albert W. Clement of a premium of $249.45, and of a like sum to be paid annually thereafter during his life, agreed in writing, not under seal, to insure the life of said Clement for the term of twenty years, in the sum of five thousand dollars "to be paid to Margaret Clement, mother of the said insured, Albert W. Clement, or her legal representatives, thirty days after due notice and satisfactory evidence of the death of the insured."   The death of the mother in the lifetime of the insured and his subsequent death, as well as some letters written by him to the agent of the company, which will be considered later, in connection with the claim of the appellant that the appellee is estopped to deny the liability, are also alleged.   The appellant being the executor of the insured claims the amount of the insurance, and the appellee, while not denying its liability on the policy, contends that the money is payable to the legal representatives of Margaret Clement, and not to the executor of the insured.

"In ordinary life insurance, where no power of divestiture is reserved, the general doctrine prevails that the issue of the policy confers immediately a vested right upon, and raises an irrevocable trust in favor of the party named as beneficiary, a

right which no act of the insured can impair without the bene-
ficiary's consent." 3 *Am. & Eng. of Law* (2nd ed.) 980. The
great number of authorities cited in the notes to sustain that
statement of the law will relieve us from the necessity of quot-
ing from them, or discussing those in conflict with it.    But
Margaret Clement, the beneficiary named, having pre-deceased·
the insured, the appellant contends that upon her death all her
interest ceased, and upon the death of the insured the insur-
ance passed to his executor.    It is said that we must be gov-
erned by the intention of the parties to the contract, the in-
surance company and the assured, as evidenced by the policy ,
when read in the light of the surrounding circumstances, and
that Albert W. Clement only intended to make provision for
his mother in case she survived him, and he could have no
object in providing for her executor or administrator.    If by
a proper construction of the terms of the policy it could be
seen that the intention of the parties was to give Mrs. Clement
the benefit of the insurance if she survived the insured, and,
if she did not, that it was to go to his estate, there would of
course be no question about the right of the appellant to re-
cover.    But there is nothing in the policy to justify us in
reaching that conclusion.    If such had been the intention, it
could very easily have been expressed.    That was not only
not done, but by the terms of the policy the money was to be
paid to Margaret Clement "or *her* legal representatives."
Although we do not deem it necessary to have such words,
in order to sustain the position taken by the appellee, they do,
according to some authorities, strengthen that contention.
They certainly negative to some extent the theory contended
for by the appellant, that the intention was only to provide for
the beneficiary named, and not for those representing her
estate.    It was said in *Robinson* v. *Hurst*, 78 Md. 70, that "the
words 'legal representatives' have a well recognized meaning
in the law and ordinarily signify executors or administrators,
and they will always be given this meaning, unless it can be
seen that they were used in a different sense."    There the
policy was payable to the legal representatives of the assured

and owing to the circumstances under which it was issued it was held that the assignment of the policy to a creditor with the consent of the company was valid. It was taken out solely for the purpose of reimbursing the creditor. In *N. Y. Life Ins. Co.* v. *Flack*, 3 Md. 341, the company agreed with the "assured, his executors, administrators and assigns" to pay the amount of the policy to the legal representatives of the assured, and it was held that the provision to pay to the legal representatives was designed to apply only to a case where the party died without having previously assigned the policy, and did not limit the power of assignment. But in each of those cases the policy was payable to the *legal representatives of the assured* and the right to assign them was sustained. In this case, if such had been the intention, the policy could have provided that the money should be paid to Margaret Clement, if living, and if not, to the legal representatives of the assured, and when we find that instead of so providing it was made payable to Margaret Clement "or *her* legal representatives" it is difficult to understand how it can be construed to mean *his* executor or administrator.

On page 987 of the volume of *Encyclopedia of Law* already referred to many cases are cited to show that the proceeds of policies payable to beneficiaries become assets of their estates when they die before the insured, and it is said that "Particularly if the policy is made payable to the ' executors, administrators and assigns' of the beneficiary, as well as to the latter himself, it vests an absolute title which passes at death to the parties thus named." As said in *Robinson* v. *Hurst, supra,* the words used in this policy " ordinarily signify executors, or administrators," and, as there is nothing to indicate they were used in a different sense, that meaning should be given them.

The appellant has urged as an objection to this construction the fact that the mother of the insured had an insurable interest in his life, while her legal representatives did not have. It would serve no good purpose to enter into an extended discussion of the authorities, as to who have such an interest in the life of another as will authorize them to insure it. Even

in those jurisdictions where the line is most closely drawn against insurance by those who have not what is recognized as an insurable interest in the lives of the insured, the doctrine is modified by exceptions which make it of little use in ordinary cases. In the first place they for the most part hold that when the insured contracts directly with the insurer, he can designate as his beneficiary one who has no insurable interest in his life, and then the insurable interest of the beneficiary having once attached need not, as a rule, be continuous. Numerous cases are cited on page 959 of 3 *Ency. of Law*, but our own decisions are sufficient. In *Rittler* v. *Smith*, 70 Md. 261, it was held that the assured may make a valid assignment of a policy on his own life to one who has no insurable interest therein, the policy being but a *chose in action* for the payment in money. " Such an assignment is valid in this State if it be a *bona fide* business transaction, and not a mere device to cover a gaming contract." *Ibid* 266. In *Souder* v. *Home Friendly Society*, 72 Md. 511, it was held that a person who has an insurable interest in the life of another may effect an insurance thereon, and can assign the policy, being a *chose in action*, to one who has no such interest, and recovery can be had on it by such assignee.

It was also stated at the argument that the policy contained a clause providing that at the end of twenty years, if the insured was then alive, the said sum of five thousand dollars should be paid to him, and that the application for the policy (made part of it), provided that on the surrender of the policy its surrender value should be paid to him. The declaration did not contain those allegations, but we are asked to remand the case for amendment, if we are of the opinion that they would make the declaration good and that it was not good without their insertion. But neither of those contingencies happened, and therefore they are immaterial. The rule that a beneficiary acquires a vested right at the inception of his contract between the insurer and the insured is applied to endowment as well as ordinary policies. *Pingrey* v. *National Life Insurance Company*, 144 Mass. 374; *Lockwood* v. *Michigan Mutual Life Insurance Company*, 108 Mich. 334.

But the principal question has been conclusively settled in this State in *Thomas* v. *Cochran*, 89 Md. 390.   John Q. A. Herring was insured in a mutual benefit association, and under its rules he was authorized to designate any one as beneficiary, and could change the beneficiary at will, with the assent of the association, and "if possible" of the beneficiary named in the policy.   He designated his wife as the beneficiary, and she died a year prior to his death.   He left a will in which he gave the residue of his estate, including the insurrance on his life, to his two children and the issue of two deceased children.   After his death the insurance money was claimed by his executor, by the administrator of his wife's estate, by his two surviving children, and the children of his two deceased children, and a special case was stated to which the various claimants were parties.   It was there said "It is conceded by all parties that if this were a case of ordinary life insurance the fund would be payable to Mrs. Herring's administrator, as the claim under the policy would in that event have by law devolved upon him."   The question was then considered as to whether the contract between Mr. Herring and the Mutual Benefit Association differed from an ordinary contract of life insurance so as to require the application of a different rule.   The distinction is recognized by some Courts but in this State it has not been, and in the case last cited it was held that "The designation by Mr. Herring of his wife, Ann M. Herring, as his beneficiary, when he joined the association, conferred upon her the beneficial interest in the proceeds of the policy when due.   The estate thus acquired by her in the insurance and its proceeds, although it was liable to have been defeated by the appointment of a new beneficiary by her husband if he had made the new appointment, possessed the inherent qualities of the estate of a beneficiary under an ordinary policy of life insurance, and was a valuable asset, which at her death devolved upon her administrator."   The words "or her legal representatives" were not in that certificate but without them it was held that the proceeds of the policy devolved on the administrator of the bene-

ficiary who had died a year before the assured, although the insurance was in a mutual benefit association, and the insured had the right to change the beneficiary but had not done so. That case was decided upon the express ground that the interest of the wife was similar to that of a beneficiary in an ordinary life insurance policy, and therefore it necessarily follows, irrespective of other language to that effect used in the opinion, that the interest of a beneficiary, under a policy such as the one now under consideration, devolves upon the executor if there be one, or the administrator, if the beneficiary dies intestate. See also *Expressman's Association* v. *Hurlock*, 91 Md. 595.

The only remaining question we are called upon to consider is whether the appellee is estopped to deny the right of the appellant to recover. The declaration contains two letters written by A. W. Clement to an agent of the company after his mother's death. On March 26th, 1898, he wrote to the agent acknowledging receipt of a letter from him and expressing surprise that the money went to his mother's heirs, as he supposed that on his death it would go to his heirs, and added " I wish to change the policy to read this now. It certainly would seem that I can do it without asking my brothers about it. I have no idea that they would object, but it seems to me just as well that if possible they know nothing of it. I await your check. Look this matter of heirs up before writing them." And again on April 6th he wrote " your check for *$777.73* received today. I am very much obliged. I suppose that you found out about the payment of policy in case of death by the destruction of assignments. If it does not pay my legal heirs, please have it changed so that it does." The declaration alleges that after the receipt by the agent of those letters he received additional premiums on the policy from Mr. Clement. It is upon those facts that the appellant relies for the alleged estoppel. As a result of the rule announced above as to the vesting in the beneficiary of the right to the insurance money, it follows that the insured cannot assign or surrender the policy or change the beneficiary without the consent of

those originally named unless he has reserved that power or the policy so provides, as will be seen by many of the cases cited in the *Encyclopedia of Law* above referred to.  See also pages 984 and 985 of that volume.  That being so it is manifest that the insurer cannot make the change for him, and the appellee cannot be estopped from denying liability for not doing what it was absolutely powerless to do.  It matters not that the insured may be under no legal obligations to continue the payment of the premiums.  If he refuses to do so the beneficiary, or someone on his behalf, may pay them and continue the policy in force.  *Pingrey* v. *National Life Insurance Company*, 144 Mass. 374 ; *Anderson's Estate*, 85 Pa. 202 ; *Glanz* v. *Gloeckler*, 104 Ill. 573.  It is useless therefore to consider the fact that it is not alleged that A. W. Clement believed the change had been made, or executed any papers for that purpose, or other matters reflecting upon the question.  Even if the agent had had the power to change the beneficiary, it would be carrying the doctrine very far to say that the company was estopped by the allegations in this declaration, as it is not even alleged that Mr. Clement was not aware that the change had not been made when he paid the additional premiums, and it cannot be assumed that he supposed an insurance company would make such a change in a policy without the execution of a more formal paper than those letters.  He did not die until March 3rd, 1901, nearly three years after he wrote the letters, and certainly had ample opportunity to ascertain that the policy had not been changed.

Being of the opinion that the appellant, the executor of Albert W. Clement, is not entitled to this insurance money, the judgment will be affirmed.

*Judgment affirmed, the appellant to pay
the costs.*

(Decided April 1st, 1902.)