## IDA B. ROSMAN

*vs.*

## THE TRAVELERS' INSURANCE COMPANY OF HARTFORD, CONNECTICUT, A
### Body Corporate.

*Life insurance: suicide clause; interest of beneficiary; confession by insured; motive for suicide; evidence of money losses and involved accounts.*

In the case of ordinary life insurance, the beneficiary has a vested interest from the time the contract is entered into, unless the policy provides for a change of beneficiary by the insured.

p. 693

But where the rights of the beneficiary depend upon the will of the assured, the beneficiary can acquire no vested right under the policy before the death of the assured (unless the policy, while in the beneficiary's favor, matures otherwise).     p. 693

Where the beneficiary has no vested interest, declarations of the insured made against his interest are admissible in evidence in a suit on the policy.                          p. 693

An insurance policy contained a clause excepting the company from liability in case of the death of the insured by suicide; it also contained the provision that the consent of the beneficiary was not necessary for any assignment of the policy or change of beneficiary; the insured died as the result of poison that he confessed he had administered to himself, with suicidal intent: *Held,* that his confession was admissible in evidence in a suit upon the policy brought by the beneficiary.

p. 694

In such cases evidence of financial difficulty and irregularity in the affairs of the decedent are admissible, as bearing upon the question of motive.                          pp. 694-695

*Decided February 10th, 1916.*

Appeal from the Superior Court of Baltimore City. (Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*David Ash* (with whom was *Louis Hollander,* on the brief), for the appellant.

*Wm. L. Marbury* (with whom was *James Thomas* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The appellant was the beneficiary named in a policy of accident insurance issued by the appellee to Samuel Rosman, her husband. In the suit by her to recover the amount for which Rosman was insured, in case of death, the jury found a verdict in favor of the appellee, and from the judgment entered this appeal was taken.

The record contains eighty-four exceptions to the rulings of the lower Court, and although each has been considered by us, it is not practical to discuss them separately and in detail, but they will be dealt with in the classes in which they naturally arrange themselves, and each class will be considered as a whole in discussing the principles of law applicable thereto.

Samuel Rosman was an agent of the appellee company for soliciting insurance, and on January 2nd, 1913, had himself insured against accident for the total amount of five thousand dollars, and named as the beneficiary in case of death his wife, the appellant. Provisions were made, in addition to that for loss by death, for both total and partial disability of the insured, the sums payable therefor to be paid to the insured, and also for reimbursement for any hospital charges incurred because of any injuries for which indemnity, under the policy was payable. The policy expressly excepted, how-

ever, from its operation, death caused by suicide, sane or insane. There was also a proviso that "the consent of the beneficiary shall not be requisite to a surrender or assignment of this policy or to a change of beneficiary. `

Samuel Rosman became ill on May 16th, 1913, and died June 5th following, at a hospital where he had been taken for treatment. It appears from the testimony that a physician was called in to see the sick man on May 17th and was told by Rosman that he had eaten, the previous evening, salmon and sausages. Rosman continued to grow worse and another physician was called into consultation; and upon his repeated denials that he had eaten or taken anything but salmon and sausages, the physicians treated him for ptomaine poisoning, and removed him to the Hebrew Hospital. While there, late at night, on May 28th, Rosman sent for one of his physicians and said to him: "Doctor, the night before I was taken sick, I took three tablets of bichloride of mercury, seven and one-half grains each. It didn't kill me yet, and, Doctor, if you can help me with anything go ahead and do it." Shortly afterwards he substantially repeated the above to his other physician. On June 4th Rosman was visited by an adjuster for the appellee company, three members of a lodge to which he belonged, and his brother. Rossman said to them: "Well, before I die I want to tell you something what I have done," and then dictated the following statement which was taken down separately by the adjuster and one of the lodge members, and after having been read to Rosman, was signed by him. Both papers were substantially the same, and both were admitted in evidence. They are as follows:

"BALTIMORE, MD., June 4th, 1913.

Statement of Samuel Rossman made this day in the Hebrew Hospital:

May 16th, on Friday, I took 3 bichloride, 3/7 grains, put them under my tongue, took water and washed them down. My reason for taking the tablets was because I had been playing the races and I was $700.00 in the hole. I bought the tablets which I took with

suicidal intent on Thursday night, May 15th, at drug
store S. W. corner of Baltimore and Spring Sts.

S. ROSMAN.

Witnesses: Abm. Linder, Michael Freed, Michael
Rosman, Louis Fischel, John P. Calhoun."

There was also testimony offered and admitted that the
appellee was the holder of six promissory notes delivered by
Rosman to the company, purporting to have been given by
policy-holders for premiums due on policies sold by Rosman.
The holders of the policies each testified that the notes pur-
porting to bear their signatures had not been signed by
them, but that they had paid the premiums in cash to Ros-
man. Rosman had also been paid by the company his com-
mission out of the notes. One of these notes became due six
days after he became ill.

A large number of the exceptions relate to the admissi-
bility of the admissions and declarations made by Rosman
as set forth in the above brief synopsis of the testimony. The
theory of the appellant being that in this suit by the bene-
ficiary, they were not admissible, against her, since they
were not of the *res gestae*. But for a settlement of this we
are not concerned with whether or not they were of the *res
gestae*. By the terms of the policy the insured reserved to
himself the right to change the beneficiary without the con-
sent of the beneficiary. By the overwhelming weight of
authority it is held that where the rights of the beneficiary
are dependent upon the will of the assured, the beneficiary
acquires no vested right until the death of the insured. And
this is assuredly founded upon reason; for by the contract
between the insured and the insurer, any right of the bene-
ficiary before death is a mere expectancy depending upon the
will and acts of the insured. Formerly the decisions drew a
distinction between the policies of an ordinary life insurance
and mutual or fraternal companies or organizations; declar-
ing that in an ordinary life policy the beneficiary imme-
diately acquired a vested interest at the issuance of the policy,

but that in the others he did not. An examination of the cases discloses that the reason for the distinction was based upon the lack of the right of the insured to change the beneficiary, while in the mutual and fraternal companies the policies or the charters and by-laws, which constitute a part of the contract, reserved the right to the insured to make the change. However, in this day there are very few companies of any kind which do not contain stipulations that the beneficiary can be changed at the will of the assured.

In 25 *Cyc.* 889, under Rights of Beneficiary, it is said: "The beneficiary designated in an ordinary life insurance policy has a vested interest from the time the contract of insurance is made, *in the absence of any stipulation for change of beneficiary by the insured.*" And to the same effect is 3 *Amer. and Eng. Ency. of Law* (2nd Ed.), 980, quoted with approval by CHIEF JUDGE BOYD in delivering the opinion in *Preston* v. *Conn. Mut. Ins. Co.,* 95 Md. 101. And the same distinction is recognized in *Elliott on Insurance,* sec. 355. A perusal of the many cases cited in the notes to the aforegoing will demonstrate the correctness of the text.

If then the appellant in the present case had acquired no vested interest in the policy we think it is equally clear that any admission made by the assured against his interest while he had an interest in the policy could be used against her in a suit against the insurer. If this were a suit by Rosman to recover the amount covered by the total or partial disability clauses or for reimbursement for hospital charges, there could be no sound argument urged against the admissibility of his declarations. Why then should they not be used against one who at the time they were made had only a mere expectancy?

The great weight of authority is to the effect that where the insured reserves control over the policy, so that the beneficiary has no vested interest in it, that then declarations made by the insured are admissible if declarations against his interest. In *Ency. of Evidence,* Vol. 7, p. 535, it is said: "Declarations of the persons insured, made either before or

after the issuance of a life policy, and not of the *res gestae,* should not be received in evidence, ordinarily, against the beneficiary, to avoid the policy. The same rule applies to forfeitures. *However, where the insured has the right to change the beneficiary at will his admissions are competent evidence against the beneficiary.".* We are of the opinion that not only the signed statements, but the verbal statements, in which he declared he had taken bichloride, were all admissible. Some point was made by the appellant that the statements made to the physicians were not admissible, because he did not then declare he had taken them with suicidal intent, and that, therefore, there was no admission against his interest. We think there is no force in this contention, for it was a fact to be considered by the jury in connection with the dilatoriness of his disclosing what he had taken after his repeated denials that he had taken anything. *Steinhausen* v. *Pref. Mutual Acc. Assn.,* 59 Hun. 336; *Life Association* v. *Winn,* 96 Tenn. 224; *Knights of Maccabees* v. *Shields,* 156 Ky. 270; *Brown* v. *Mystic Workers of the World,* 151 Ill. App. 517; *Lundholm* v. *Mystic Workers of the World,* 164 Ill. App. 472; *Whiteford* v. *North State Life Ins. Co.,* 163 N. C. 223; *Collins* v. *Modern Woodmen,* 98 Mo. App. 521.

A great many of the exceptions were to the admission of the testimony as to notes which were presented to the company by Rosman purporting to be for premiums on policies issued. We think there was no error committed in admitting any of this testimony. For every suicide, if by a sane person, there must be a motive. To prove the motive is often the most difficult of things. It is too well recognized that money matters are probably the predominating causes of suicide. In the present case practically the only question for the jury, after the admissions, to decide, was the question of suicide *vel non.* It surely, irrespective of the admission by Rosman, that he had taken poison with suicidal intent, would be most material to show, as bearing on the question, that his employer was in possession of paper given by him which never

had been executed by the parties whose names were signed thereto. And when taken in connection with his confession, that he was seven hundred dollars in the hole from gambling, it certainly becomes very strong as establishing a motive for destroying himself before the paper became due. Of course, it is possible that, although the notes were signed in the names of persons to whom policies had been issued and cash premiums collected, there may have been other people of the same names who actually did sign them, but that is a contention that more properly goes to the weight of the testimony rather than to the admissibility.

The appellant as a witness testified that her husband had told her he had taken some aspirin tablets. In an effort to show that he had made a mistake and had taken bichloride under the impression that he was taking aspirin, she attempted to detail a conversation she had with him several days after the occurrence, and on objection the Court would not permit the conversation to be given. This ruling was correct, for it was not a part of the *res gestae,* nor was it a declaration against interest. It was more in the nature of a serf-serving declaration, and therefore was not admissible.

The questions asked concerning conversations had with Michael Rosman were properly excluded, he being neither a party nor having been produced as a witness so that he could be impeached.

The first prayer of the appellant was properly refused, for there was ample evidence from which the jury could find that Rosman came to his death through suicide. The instruction asked for in the third prayer was plainly given by the granting of the appellant's second. The fifth prayer was properly refused as it was misleading and confusing, in the extreme. The two prayers granted at the instance of the appellee properly and fairly presented the law of the case.

Finding no reversible error, we will affirm the judgment.

*Judgment affirmed, with costs to the appellee.*